THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
VIDA NOLAN, Defendant-Appellant.

First District (3rd Division)   No. 1—87—3145

Opinion filed May 15, 1991.

Randolph N. Stone, Public Defender, of Chicago (John T. Kennedy and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Renee Goldfarb and James S. Veldman, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CERDA delivered the opinion of the court:

Defendant, Vida Nolan, was convicted after a jury trial of murder (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(2)) and was sentenced to 20 years' imprisonment. Defendant argues on appeal that it was error not to instruct the jury on voluntary manslaughter (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b)) and self-defense (Ill. Rev. Stat. 1985, ch. 38, par. 7—1) and that defendant's trial counsel was ineffective.

Defendant waived a preliminary hearing, and there is no transcript of the *voir dire*. At the beginning of the trial, the trial court advised the jury that opening statements were merely statements of the facts that the attorneys expected the evidence to prove.

Defense counsel stated at the beginning of his opening statement that lawyers' statements were not evidence. He also stated that: defendant had been in the course of 3½ years the live-in girl friend of the victim, Dion Frazier; while living at Frazier's mother's house, Frazier used to beat defendant; defendant left a lounge in the morning of October 5 after having had a considerable amount of gin and saw Darleen Davidson with Frazier; Davidson started an argument with defendant, the women pulled each other's hair, and Frazier stepped in and pulled defendant's hair; later, defendant took a knife from her purse and warned Frazier not to approach but he came towards her and virtually stabbed himself; and Frazier had been smoking marijuana laced with "pcp" and his eyes were "bugged-out."

Darleen Davidson testified that she was Frazier's girl friend. At about 4 a.m. on October 4, 1986, she was in front of the projects in Robbins, Illinois. Defendant walked past her and Frazier and called Frazier names. Frazier called defendant a name, and someone in the nearby crowd said that defendant should hit Frazier in the head with a bottle. Defendant approached and threatened Frazier, who stood with his hands in his pockets and who said to "go ahead." Defendant swung her purse at Frazier, but the purse hit the building. After someone handed defendant back her purse, she took a knife out of it and pointed the knife in Frazier's face. Defendant stood facing Frazier. Frazier said that it was the same knife he had taken from defendant two weeks earlier. Then defendant stabbed Frazier in the heart and stabbed Davidson in the hand. Davidson took Frazier to the hospital.

On cross-examination, Davidson testified that Frazier did not look "high." She talked to a police officer and to two assistant State's Attorneys before she testified.

Tony Yates testified that he saw defendant and Frazier arguing at about 4 a.m. on October 4, 1986. They were calling each other names, and Frazier told her to "get out of" his face. Frazier had his hands in his pockets. Defendant's mother hit Frazier, and defendant swung her purse at Frazier. Neva Hughes returned to defendant the purse from which defendant took a knife that she swung at Frazier's face. Frazier continued to stand with his hands in his pockets, and Frazier asked defendant whether that was the knife he had taken from her two weeks earlier. While defendant waved the knife close to Frazier's face, she said she was going to kill him. She then stabbed him in the chest and ran over to Davidson and tried to stab her. Yates took Frazier to the hospital.

On cross-examination, Yates testified that prior to taking the stand, he was in a room at the courthouse with Davidson, Frazier's mother, and the assistant State's Attorney, and he heard Davidson tell her story. Yates told his story on an earlier day in the presence of Davidson, "Eric," and Kenny Brown. He did not believe that Frazier was drunk or "high."

Neva Hughes testified that defendant was talking loudly to Frazier, who was telling her to leave him alone. Defendant swung at Frazier with the purse and then defendant's mother walked outside. Frazier told defendant's mother to take defendant inside and that he did not want to fight with her. After defendant took out the knife, Frazier said that the knife was the same one he had taken from her the week before. When defendant stabbed Frazier, he had his hands in his pockets.

Robbins police sergeant Anthony Koetzle testified that defendant was crying and her head was hanging down when he arrested her. He did not detect any alcohol on her breath.

A stipulation was entered into that: (1) Frazier was examined upon arrival at the emergency room at St. Francis Hospital at 4:20 a.m. by Dr. Bruce Johnson, who noted a stab wound to the left chest; (2) Frazier died at 6:08 a.m.; (3) Dr. Yuksel Kinachki performed an autopsy on Frazier on October 6, 1986, and noted that the cause of death was a stab in the chest; (4) Dr. Michael Schaeffer performed a toxicological examination of Frazier's blood and did not find the presence of alcohol or opiates; and the State's exhibits Nos. 1 and 3 were photographs of Frazier which were prepared during the autopsy and which accurately portrayed the condition of Frazier and his clothing.

Anna Cole testified for defendant that defendant and Frazier stayed at her home together off and on until the winter of 1984. Defense counsel asked Cole how Frazier treated defendant, but an objection was sustained. Defense counsel then asked whether Cole knew of any beatings of defendant by Frazier. An objection was made on the basis of irrelevancy, and prior to a ruling on the objection, defense counsel stated that he had no further questions.

Aretha Mills testified for defendant that she saw Frazier and defendant at 8 p.m. on October 3, 1986, arguing in front of the projects. Defendant said that she would give Frazier his clothes when he returned her money. Frazier grabbed her by the arm, and they went into defendant's mother's apartment. Mills followed them inside and saw Frazier "snatch" defendant into the washroom. Frazier closed the door but Mills could hear them "tussling." Mills asked Frazier to open the door, but he responded that he was talking to defendant. When the door opened, defendant's clothes were "unraveled" and "twisted all about."

Defendant testified that she had been in custody since her arrest. She and Frazier started living together in November 1985. They stayed at his mother's house for about two months, and they stayed together at an aunt's house on and off for about two or three months. She had a couple of gin drinks at a lounge the evening of October 3 or the morning of October 4. Later, outside her home, she walked past Frazier and Davidson. She had an argument with Davidson, and Frazier kept getting in between them. Frazier's hands were at his sides. She swung the purse at him but it went over his head. She grabbed his hair after he grabbed her hair. She told him not to put a hand on her anymore. She took out her knife after he grabbed her hair, and he "advanced towards" her. That is when the knife struck him.

The testimony was not clear whether defendant thrust the knife at Frazier or whether he walked into the knife. Defense counsel attempted to clarify defendant's testimony, but an objection was sustained. Defendant further testified that after the knife struck Frazier, he stood there for five minutes before running away. She did not intend to kill Frazier. Defendant then fought with Davidson. She told someone later that she had not stabbed Frazier.

On cross-examination, defendant testified that she had lived with Frazier on and off for about two or three months and that she had seen him for over three years. She was upset that he was also seeing Davidson.

After the close of the evidence, defense counsel stated outside of the presence of the jury that he had information that certain of the State's witnesses had penitentiary records, that he had asked counsel for the records, and that counsel told him that he did not have such information. The assistant State's Attorney responded that he asked the witnesses about their backgrounds and that they claimed they had none.

Defendant tendered instructions on voluntary manslaughter but not on self-defense. The trial court found that self-defense was not raised because defendant testified that she did not stab him, so the jury was instructed only on murder and not on voluntary manslaughter.

Defense counsel stated in closing argument that defendant offered evidence that the victim beat her on previous occasions but that the evidence was "dismissed" because it was "remote" in time. It was also argued that defendant, who had several drinks, only intended to frighten off the victim, told the victim not to come, and that the victim walked towards defendant and accidentally stabbed himself to death.

Defendant's motion for a new trial argued in part that the trial court erred in refusing to give the jury instructions on voluntary manslaughter. The motion was denied.

Defendant first argues on appeal that the trial court erred in refusing to instruct the jury on voluntary manslaughter because there was evidence that defendant had an unreasonable belief that she had to defend herself from the victim, who had beaten defendant in the past and who had advanced on defendant after she pulled the knife out from her purse. Defendant also refers to the testimony that the victim stated that the knife was the same one he had taken from defendant two weeks earlier and that the victim had grabbed defendant's hair just before defendant stabbed him.

The State argues in response that there was no evidence that would have supported a finding that defendant acted in the unreasonable belief that she was acting in justifiable self-defense and that defendant was the aggressor so that self-defense was not available to her as a defense.

A trial judge in deciding whether to give an instruction to a jury must decide if there is evidence which if believed by a jury would reduce a crime to a lesser included offense. (*People v. Dortch* (1974), 20 Ill. App. 3d 911, 914, 314 N.E.2d 324.) If there is evidence, then the jury instruction must be given.

Voluntary manslaughter includes the intentional or knowing killing if at the time one unreasonably believed the circumstances to be such that, if they existed, would justify or exonerate the killing. (Ill. Rev. Stat. 1985, ch. 38, par. 9—2(b).) A voluntary manslaughter instruction must be given if there is any evidence presented that, if believed by the jury, would reduce the crime to manslaughter. *People v. Robinson* (1989), 192 Ill. App. 3d 225, 231, 548 N.E.2d 674.

An instruction on justifiable use of force should be given if there is some evidence in the record which, if believed by a jury, would support a claim of self-defense. (*People v. Lockett* (1980), 82 Ill. 2d 546, 551, 413 N.E.2d 378, 381.) This would give the jury an opportunity to decide whether the defendant subjectively believed that the use of force was necessary but that defendant's subjective belief was unreasonable under the circumstances. This conclusion would give rise to a verdict of voluntary manslaughter. Accordingly, instructions on justifiable use of force and voluntary manslaughter should be given when any evidence is presented showing defendant's subjective belief that use of force was necessary. *People v. Holloway* (1985), 131 Ill. App. 3d 290, 311, 475 N.E.2d 915.

Defendant was the only person who testified that the victim did anything in response to her pulling out a knife. She testified that she and the victim grabbed each other's hair, that the victim advanced towards her after she took out the knife, and that the knife then struck him. Defendant did not testify that she believed that deadly force was necessary to protect herself. She did not even testify that she stabbed the victim but suggested, through ambiguous testimony that the knife "struck" the victim, that the victim was stabbed either in an accident or by his walking into the knife.

In *People v. Simpson* (1984), 129 Ill. App. 3d 822, 473 N.E.2d 350, defendant shot and killed a man he believed was having an affair with his wife. When defendant threatened the victim, the victim opened the door to his van and reached inside. Defendant immediately shot the

victim. On appeal, defendant argued that he was entitled to a voluntary manslaughter instruction because he had an unreasonable belief that he had to protect himself from the possible threat of being shot by a weapon from the van. Upheld on appeal was the trial court's conclusion that there was no evidence that would allow a jury to reduce the homicide from murder to voluntary manslaughter. *Simpson*, 129 Ill. App. 3d at 840.

An instruction for voluntary manslaughter was properly refused in this case. See *People v. Holloway* (1985), 131 Ill. App. 3d 290, 311, 475 N.E.2d 915 (there was no basis for an instruction on voluntary manslaughter because the death was either accidental or intentional).

■ Defendant next argues that the jury should have been instructed on self-defense even though no such instructions were tendered. Although, in general, the failure to tender an instruction waives any error in not so instructing the jury (*People v. Turner* (1989), 128 Ill. 2d 540, 562-63, 539 N.E.2d 1196), the issue can be addressed under the plain error rule, because if there was evidence of self-defense, the failure to instruct the jury on self-defense would have been a serious error that would have denied defendant a fair trial. See *People v. Thomas* (1989), 189 Ill. App. 3d 365, 373, 545 N.E.2d 289 (the plain error exception to the waiver rule will be applied only when either the evidence was closely balanced or if the error is of such a magnitude that defendant is denied a fair and impartial trial).

■ Defendant argues that the evidence of self-defense was the prior fight between her and the victim, the victim's grabbing of her hair, and the victim's advancing towards her after she drew the knife. But this evidence does not establish at least three of the elements of self-defense, *i.e.*, force was threatened against a person, the danger of harm was imminent, and a reasonable belief that the use of force was necessary to avert the danger and that the kind and amount of force she used was necessary. (*People v. Isbell* (1988), 177 Ill. App. 3d 854, 865, 532 N.E.2d 964.) The use of deadly force in self-defense has restrictions. As stated in *People v. Stokes* (1989), 185 Ill. App. 3d 643, 655-56, 541 N.E.2d 1129, deadly force is limited to those situations in which: (a) the threatened force will cause death or great bodily harm; or (b) the force threatened is a forcible felony.

■ Jury instructions must be based upon the evidence introduced in a trial and, when the evidence provides no basis upon which the jury could find that the killing of the victim by the defendant was self-defense, it is improper to give the jury an instruction on self-defense. *People v. Cannon* (1988), 176 Ill. App. 3d 49, 54, 530 N.E.2d 1035.

■ Even if defendant and the victim had fought on an earlier occasion and even if he grabbed her hair, the stabbing was clearly unnecessary. Defendant took a knife from her purse, verbally threatened to harm the victim, pointed the knife towards the face of the victim, and then stabbed him in the heart.

Since the evidence did not produce any threat of deadly force by the victim against defendant, the court did not have to instruct the jury as to self-defense.

■ Defendant next argues that her trial counsel was ineffective. Defendant must prove that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's alleged errors, the outcome of the proceeding would have been different. *People v. Albanese* (1984), 104 Ill. 2d 504, 525, 473 N.E.2d 1246.

■ In the opening statement, defendant's trial counsel allegedly stated that defendant lived with the victim for 3½ years, which was incorrect because she actually lived with him for two to three months on and off. Defense counsel actually stated that defendant had been "in the course of three and one-half years" the live-in girl friend of the victim. This statement could be interpreted to mean that they had lived together during some portion of their 3½-year relationship. This statement did not necessarily contradict defendant's testimony, which was itself conflicting. Defendant testified that she had lived with the victim for two months at one location and on and off for about two months at another location.

It is true that in defense counsel's opening statement he stated that Davidson started the fight, that the victim's eyes were "bugged out" from drugs, and that defendant had drunk a lot, and that there was no evidence of these facts during the trial. These errors were not prejudicial to her case, which was based on the relevant facts of how the stabbing occurred and the theory that defendant did not intend to kill the victim.

Defendant argued that her trial counsel was ineffective because in the opening statement the attorney presented an incorrect theory of defense, apparently the absence of intent to kill. The decision to argue or not to argue in the opening statement that the facts would show that defendant did not intend to kill the victim or that defendant acted in self-defense was a matter of trial strategy. Defendant's case was based on the facts of how the stabbing occurred and the theories of lack of intent to kill and voluntary manslaughter.

■ Defendant argues that her counsel was ineffective by failing to make an offer of proof as to prior beatings of defendant by the vic-

tim after objections were sustained to his attempted questioning of Anna Cole. An offer of proof could have established, for purposes of review of the issue of the admissibility of evidence of the beatings to show defendant's belief that the stabbing was justified, the number and extent of the beatings and when and where they occurred. But even if these details were necessary for review in general of the admissibility of the victim's prior beatings of defendant, defense counsel dismissed the witness before the trial court ruled on the relevancy objection to his question whether the witness had any knowledge of any beatings. Ironically, because there was no offer of proof, the record does not show to what Cole would have testified and, therefore, there is no basis for finding that the abandonment of this line of questioning was ineffectiveness of counsel that prejudiced defendant. But because there was no evidence that defendant stabbed the victim in order to defend herself, evidence of prior beatings would not have changed the outcome.

■■ Defendant argues that counsel was ineffective because in the closing argument he did not argue a viable defense and argued instead that the death was an accident caused by the victim's stabbing himself to death. A justifiable self-defense theory could not have been argued to the jury because there was no evidence of self-defense and no self-defense instructions had been tendered. Defendant could not have argued that she stabbed the victim in the unreasonable belief that he was going to harm her because the trial court refused the voluntary manslaughter instruction. The argument that the stabbing was an accident caused by the victim was proper.

■■ Defendant argues that her trial counsel was ineffective because he did not cross-examine the officer who interviewed defendant and the victim's mother. Neither of them witnessed the stabbing so defense counsel could have believed that their testimony was not harmful to defendant's case. It could have been a matter of trial strategy.

Defense counsel is faulted for bringing out the fact that defendant was incarcerated at the time of trial. Defendant does not specify how her case was harmed, but speculates that there might have been some adverse effect from this revelation by defense counsel. In this case such speculation shows neither unprofessional error nor prejudice to defendant as a result of the evidence.

Defendant criticizes defense counsel for failing to object to the admission of several photographs of the victim and the failure to impound the photographs. Without viewing the photographs, which were not part of the record, it cannot be determined that defense counsel should have objected to them and should have requested that they be

impounded. There is nothing here to show that the failure to object was a professional error or that, had objection been made, it would have been sustained. Defendant does not state how the outcome would have been different if the photographs had not been admitted.

Defense counsel is also faulted for stipulating to a toxicologist's report concerning a blood sample of decedent when the blood sample had been taken two days after the death. The stipulation concerning the test indicates that the autopsy was performed on the day of death and that the toxicological tests were ordered during the autopsy. There is nothing in the record to support defendant's argument that the blood sample was taken two days after the death. Even assuming that the findings of no alcohol or opiates in the blood were questionable, defendant does not state how the outcome would have been different.

Defendant criticizes defense counsel for never obtaining the arrest records of the prosecution witnesses and for waiting until both sides had rested before informing the court that he had asked the State for information about the penitentiary records of certain witnesses. The record indicates that defense counsel had requested the State to produce any criminal record of the State's witnesses before trial and that the State informed him that according to those witnesses they had no criminal records. The State denied that it had such information. There is no record of any conviction records. Defense counsel cannot be found to be incompetent for failure to obtain criminal records in this case.

Numerous other allegations of ineffectiveness of trial counsel were reviewed and considered; however, none of them could possibly have affected the outcome of the trial.

Defendant clearly could have received better representation but her representation was competent. The evidence of her guilt was overwhelming and defendant received a fair trial.

The judgment of the circuit court is affirmed.

Affirmed.

RIZZI and WHITE, JJ., concur.