*In re* S. D. S., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* S. D. S., Respondent-Appellant.)

Third District    No. 81-164

Opinion filed February 8, 1982.

Robert Agostinelli and G. Joseph Weller, both of State Appellate Defender's Office, of Ottawa, for appellant.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

On February 20, 1981, in Rock Island County, the People filed a delinquency petition against S. D. S., age 15, who was already a delinquent and on probation for theft, charging him with solicitation and conspiracy to commit murder. The minor was further adjudicated delinquent. After a dispositional hearing, he was committed to the Department of Corrections.

Defendant raises three issues in his appeal. First, that his confession was not voluntary in that his *Miranda* rights were not waived. Second, that his confession was not corroborated. And third, that the defendant cannot stand convicted of both solicitation to commit murder and conspiracy to commit murder since solicitation is a lesser-included offense of conspiracy.

When the alleged offenses occurred, S. D. S. was in the temporary custody of the Moline Group Boys Home. Previously, he was made a ward of the Court and placed on probation for stealing a motorcycle. On January 14, 1981, a petition to revoke probation was filed against S. D. S. for burglary. The burglary incident resulted in the defendant being placed in the temporary custody of the Moline Group Boys Home, which was his custodial home at the time of the instant offense. The burglary charge is not before this court.

However, at the adjudicatory hearing as to the revocation petition involving the offenses of solicitation and conspiracy to commit murder, the victim, Linda Young, testified that she was the housemother at the

Boys Home on February 19, 1981. On that day, while working in the kitchen, Michael Burch stabbed her in the back with a knife. Mrs. Young was hospitalized because of her wound. Burch and S. D. S. were roommates at the home. S. D. S. was not in the house at the time of the stabbing. The People moved into evidence the minor's confession as to the solicitation and conspiracy and then rested. S. D. S. presented no witnesses. The trial court found S. D. S. guilty of both offenses.

Insasmuch as the defendant was not present at the stabbing, the cornerstone and, indeed, the only direct evidence of his guilt of solicitation and conspiracy was his confession. The defendant filed a pretrial motion to suppress this confession on the grounds that it was not voluntary. The pretrial suppression motion was denied and, as already indicated, the confession was received in evidence at trial. The hearing on the motion to suppress the confession proceeded as follows.

Officer Brockway was the first witness. Before S. D. S. appeared at the police station on February 19, 1981, Officer Brockway spoke with the minor's father, Ernest Smith, who was present at the station. S. D. S. then arrived in a police vehicle. He was read his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, from a form which he signed. His acknowledgment at the bottom of the *Miranda* form which was read to him was as follows:

> "* * * I, [S. D. S.] have had 8 years of education, and I understand the above rights.
>
> Signed, [S. D. S.]* * *."

No force or threats were used against the defendant. At this juncture, however, it should be noted that the above acknowledgment is something short of a waiver of rights. Waiver of one's rights goes a step further than merely knowing one's rights. Officer Brockway testified that S. D. S. seemed to understand his rights. Before questioning the minor, Brockway said, S. D. S. conferred with his father. However, Ernest Smith was not present in the room where Officer Brockway questioned S. D. S. The presence of an attorney or the father was not specifically requested by S. D. S. or his father. Nor did S. D. S. expressly waive his *Miranda* rights, orally or in writing.

The next witness was the father, Mr. Smith. He stated that although he and his son sat next to each other in the police station, he did not talk with his son prior to any police questioning. He said he had no reason to say anything to his son.

The confession consists of three typewritten pages. It was taken at two different times over a period of roughly 40 minutes. In it, S. D. S. said he, Lonny Stark, and Michael Burch had a discussion about assaulting Mrs. Young. The purpose was to steal her car and money and flee the

jurisdiction. The initial plan was to hit Mrs. Young on the head with a frying pan and tie her up. S. D. S. said it was his idea to stab the victim. This discussion took place on February 19, 1981, at 7 a.m. The three boys had discussed the matter for about four days previous to the day of the stabbing.

At the conclusion of the suppression hearing the trial judge ruled the confession was voluntary. The minor contends this was error.

Since the police did not obtain an express written or oral waiver of the minor's *Miranda* rights, S. D. S. contends, his confession was involuntary. Moreover, he submits, we should adopt a *per se* rule which excludes a juvenile's confession, unless the minor was accorded the opportunity to consult with his parents, a guardian, or an adult friend before deciding to talk with police. Indiana adheres to this rule (*Lewis v. State* (1972), 259 Ind. 431, 439, 288 N.E.2d 138, 142.) The People respond that the issue of S. D. S.'s express waiver of his *Miranda* rights was not specifically raised in the trial court, and that our adoption of the minor's *per se* rule as to consultation would contravene settled Illinois law. We cannot agree totally with either party's position.

■■ The minor claims his confession was involuntary because there was no express waiver of his *Miranda* rights. The real issue, however, is not express waiver but whether he, in fact, waived his rights at all. This determination is reached based on the totality of the circumstances when the confession was given. It is not necessary that there be an express waiver if the circumstances indicate that actual waiver occurred. These circumstances include the characteristics of the accused, whether he was advised of his *Miranda* rights, understood those rights, and acknowledged waiving such rights. Other considerations concern the manner of interrogation, whether the minor was denied physical comforts, coerced or threatened, or questioned repeatedly for a prolonged duration. (*People v. Prim* (1972), 53 Ill. 2d 62, 70, *cert. denied* (1973), 412 U.S. 918, 37 L. Ed. 2d 144, 93 S. Ct. 2731; *In re Lamb* (1975), 61 Ill. 2d 383, 388, *cert. denied* (1976), 425 U.S. 938, 48 L. Ed. 2d 180, 96 S. Ct. 1672.) The list is not exhaustive, nor could it be, since it depends on the facts a particular cause generates.

The People contend that the question of the express waiver of the defendant's *Miranda* rights was not specifically raised as an issue before the trial court. Accordingly, the People claim that this issue has been waived for purposes of this appeal. While it is true that defendant did not specifically address the question of his lack of specific waiver of *Miranda*, he did raise the objection that his confession was not voluntary. The voluntary nature of his confession necessarily includes many elements. One of these elements is the factual matter of whether there was a specific waiver of rights. That is part of the totality of circumstances and, thus,

merits consideration on appeal. It was not waived by the defendant for purposes of this appeal.

■■ Another element of the voluntary nature of the confession is whether the juvenile's parents are present when the minor confesses. Illinois does not follow the *per se* rule regarding a minor's opportunity to consult with a parent or other person before being questioned. Our Supreme Court has stated, rather, and as noted above, that the voluntariness of a juvenile's confession must be gleaned from the totality of the circumstances.

The police have a statutory duty to contact a minor's parents once he is taken into custody. (Ill. Rev. Stat. 1979, ch. 37, par. 703—2(1).) A reasonable effort by the authorities is what the statute mandates.

The record reflects that S. D. S.'s parents were attempting to cooperate with the police. Mr. Smith was at the Moline police station when S. D. S. arrived. Communication between the police and Mrs. Smith had occurred. Officer Brockway testified that the father was permitted to talk with his son at the station before the questioning. He did not, however, invite the father into the interview room during the questioning. By the same token, the father never insisted on the right to accompany his son into the interrogation room. He took it for granted that he would not be allowed to accompany his son during the interrogation. Likewise, Officer Brockway testified that he did not believe that the father had a right to be present. Thus the record does not show that the father was barred or that he asserted any right to be present. Yet, given the officer's state of mind concerning the matter, it appears that the father would not have been allowed to be present even if he had asked the privilege.

■■ One of the reasons the police have a duty to call the minor's parents is to permit the parents to be with their child. This does not mean that a parent has to be present every time the police want to question a minor. It does denote that, ordinarily, if parents have indicated an interest by their presence, then they should be allowed to confer with their children before any questioning begins, as well as be present when any questioning occurs. This is an element to be considered in evaluating the voluntary nature of the confession.

S. D. S., it should be noted, was not a stranger to our criminal justice system. He was a ward of the court, having been adjudicated guilty of theft and charged with burglary within recent months. He had been questioned by authorities in the past. Although not doing well academically in high school, no question was raised that his intelligence level was other than normal. It was undisputed that he was not threatened into confessing, or promised anything, or physically abused in any way by Officer Brockway.

■■ A trial judge's ruling on the question of a confession's voluntariness

will not be reviewed unless against the manifest weight of the evidence. See *People v. Wipfler* (1977), 68 Ill. 2d 158, 177.

■■ Officer Brockway was in error in his belief that the father had no right to be present with his son during the questioning. There is nothing in the record, however, to indicate that either the son or the father requested that father's presence during the interview. If a person does not request a cigarette, it can hardly be argued that he was refused cigarettes. Likewise, it can hardly be argued that defendant and his father were denied something that neither of them either wanted or requested, *i.e.*, the presence of the father during the questioning. It is noteworthy that the father testified that he did not even attempt to speak to his son when he was seated next to him in the police station before the questioning began because the father felt that he had no reason to talk to him. This attitude prevailed notwithstanding the father's knowledge that a stabbing had occurred at the home and that his son might be involved. Officer Brockway testified, however, that the father did talk to his son before the questioning. The fact that Mr. Smith was not present during the questioning is merely one factor along with all of the other factors in determining whether the confession of the minor was voluntary. From our view of the record, and considering all of the circumstances, we find that the trial judge's ruling was not erroneous. It appears to us that the defendant's statement was indeed voluntarily given.

The next issue is whether evidence corroborates S. D. S.'s confession to the crimes of solicitation and conspiracy to commit murder. Because Mrs. Young's testimony evidenced a fact that a crime occurred, as well as tended to corroborate S. D. S.'s confession, the People contend, we should affirm both verdicts.

■■■ The parties agree that a confession which is not corroborated by other independent evidence of the *corpus delicti* of a crime cannot support a criminal conviction. They cannot agree on the nature of such corroborative proof. The form of such corroboration must show that a crime occurred (*People v. Melquist* (1962), 26 Ill. 2d 22, 28-29, *cert. denied* (1963), 372 U.S. 967, 10 L. Ed. 2d 130, 83 S. Ct. 1093), or has a tendency to inspire belief in the veracity of the confession of S. D. S. (*People v. Brechon* (1979), 72 Ill. App. 3d 178, 181-82). If there is corroborative evidence which tends to confirm the circumstances related in the confession, both the corroborative evidence and the confession may be considered in determining whether the *corpus delicti* of the crime(s) charged was adequately established by the prosecution. *People v. Melquist.*

We believe that the confession, considered with the fact of the stabbing, is sufficiently corroborated by circumstantial evidence. What is

that circumstantial evidence? First of all, the confession or statement coincides with the facts of the stabbing. Further, both S. D. S. and Burch lived together at the same delinquent boys home. They ate together. Indeed, they were roommates. All conversations between S. D. S. and Burch occurred during such times. Coupled with the above is a lack of any reason to doubt the defendant's statement. It is a plausible, rational statement. There is no evidence and no reason to indicate that it was made up out of thin air. All circumstances indicate otherwise. At this juncture, even, the truth of the statement has not been denied. Only its voluntariness has been disputed, and that issue has been resolved against the defendant.

■■ The final issue is whether solicitation to commit murder is a lesser-included offense of conspiracy to commit murder. We agree that it is. Solicitation occurs when one commands, encourages or requests another to commit an offense. Conspiracy occurs when the other party agrees to the commission of that offense and performs an act in furtherance of that agreement. Ill. Rev. Stat. 1979, ch. 38, par. 8—1 *et seq.*

We recognize a divergence of opinion on this issue. *People v. Latham* (1979), 73 Ill. App. 3d 995, 997-98; *People v. Harvey* (1981), 95 Ill. App. 3d 992, 1002; and see *People v. Mays* (1981), 93 Ill. App. 3d 352, 355 (Justice Barry dissenting).

In *Latham*, the defendant was charged with conspiracy and solicitation to commit murder. Defendant and the victim's wife engaged in a plot to kill the wife's husband, collect the insurance money on the husband's life, and split the proceeds. The defendant pleaded guilty to both offenses. The trial judge imposed a single sentence, believing solicitation was a lesser-included offense of conspiracy. The appellate court reversed, concluding without analysis that it was "* * * obvious that neither solicitation nor conspiracy is a lesser included offense of the other. * * *" *Harvey*, as well as *Mays*, merely recites this holding.

A lesser-included offense is one comprised of some, but not every element, of the greater offense. The greater offense will include every element of the lesser offense plus some other elements so that it becomes impossible to perform the greater offense without committing the lesser one. This is not only a statutory precept (Ill. Rev. Stat. 1979, ch. 38, par. 2—9), but also a judge-made rule. *Prindiville v. People* (1866), 42 Ill. 217, 220.

To solicit means to ask. The statutory definition of solicitation adds to command and to order. To conspire means to agree. The statutory definition of conspiracy adds the performance of an act in furtherance of that agreement. The end sought, of course, must constitute an offense in order for either solicitation or conspiracy to be an offense.

A conspiracy or agreement would necessarily include a command, an

encouragement or a request. One of these elements would have to precede the agreement. In contract terms, they would constitute the offer. The legal conspiracy would arise when two additional factors transpired. First would come the acceptance. Considered in these terms, it is clear that you could not have an acceptance without an offer. That is to say, there is nothing to accept or agree to if there is no offer in the first place. The crime of statutory conspiracy would not be complete, however, until the act in furtherance of that agreement took place. That is the second event, post-solicitation, that makes the crime of conspiracy complete. Thus it is seen that conspiracy is a crime consisting of three elements, they being request, agreement, and act. The first element constitutes the crime of solicitation. When the two additional elements are added, you have the crime of conspiracy.

Defendant asks for a new dispositional hearing since the sentencing judge considered that the defendant was guilty of two offenses rather than a single offense. Considering the nature of the transaction in the case at hand, it is difficult to conclude that the finding of dual guilt would be construed by the sentencing judge as anything more than technical duality. And, it must be borne in mind that this is a juvenile case and not a criminal case. The commitment here is for an indefinite term. Finding of dual guilt would not and could not result in a longer sentence. The defendant here was already on probation as a juvenile delinquent. A finding of guilt on either the solicitation or the conspiracy charge standing alone well warranted his commitment to the Department of Corrections, Juvenile Division.

Accordingly, the finding of delinquency, the adjudication as a ward of the court and the commitment to the Department of Corrections, Juvenile Division, are affirmed.

Affirmed.

SCOTT, P. J., and STOUDER, J., concur.