THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRANCE BRIDGES, Defendant-Appellant.

Third District   No. 3—89—0278

Opinion filed June 8, 1990.

Joseph N. Ehmann, of State Appellate Defender's Office, of Ottawa, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (Michael C. Rolinski, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

Defendant Terrance Bridges was charged with armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18—2) and attempted murder (Ill. Rev. Stat. 1987, ch. 38, par. 8—4(a)). Following a jury trial, the defendant was convicted of both charges and sentenced to concurrent 30-year prison terms. The defendant appeals his convictions and sentence. We affirm.

The defendant's convictions arise from an incident that occurred on August 11, 1988, at the Coastal Mart gas station/convenience store located at 2324 7th Avenue in Rock Island. According to the store manager and a store customer, at approximately 4 p.m. on that day, a black male, later identified as the defendant, entered the store. Armed with a gun, the defendant demanded money. The manager, who had seen the defendant in the store on previous occasions, apparently thought he was joking. The manager locked the cash register and turned his back on the defendant. The defendant shot the manager in the back. He then again demanded money. The manager, with the assistance of the customer, loaded some rolls of change into a bank bag. The defendant demanded more money so the manager took out his wallet and gave the defendant a $5 bill. The defendant then fled, and the customer called the police. Using a photo lineup, the manager later identified the defendant as being the person who had shot him.

The defendant, who was 17 years of age at the time of the crime, turned himself in to Rock Island police on August 12, 1988, at approximately 4 a.m. He was arrested and subsequently interrogated, where he made incriminating statements to investigating police officers.

The issue of the defendant's fitness to stand trial was raised at a hearing on February 8, 1989. A psychiatric expert testified that it was his opinion that the defendant had "borderline intelligence" but that he

would be able to participate in his defense if his attorney took care to educate him as to the various aspects of the defense. The defendant was found competent to stand trial.

At the beginning of the defendant's trial on February 14, 1989, a hearing was held on the defendant's motion to suppress his confession. Rock Island police investigator Ronald Moser testified that he interrogated the defendant at approximately 1 p.m. on August 12, 1988. A second officer, Charles Hauman, looked on through a security viewer located on the door to the interview room. Hauman testified that he could hear the conversation.

According to Moser, the interview commenced with Moser verbally giving the defendant his *Miranda* (*Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602) rights. Moser asked the defendant if he understood his rights, and the defendant indicated that he did. Moser then asked the defendant to sign a waiver of rights sheet which the defendant did. Moser told the defendant that he was investigating an armed robbery and asked the defendant if he had committed it. The defendant denied involvement in the crime. Moser then asked whether there was any reason why defendant's bloody footprints would be found at the crime scene. The defendant replied no. Moser then asked if there was any reason why his fingerprints would be at the crime scene. The defendant again replied no. Moser then asked if there was any reason that he'd be on the security camera film. The defendant did not reply. Moser indicated that on the film he could not see what the attendant was doing. He asked the defendant to explain and queried whether the defendant thought that the attendant was going for a gun. The defendant replied affirmatively, indicating that he thought the attendant was going for a gun so he shot him.

Moser then told the defendant that the attendant wasn't dead yet, but that they would need the gun to help determine the trajectory which could be used to assist in medical treatment. The defendant indicated that he threw the gun in the woods behind Turnkey Apartments. The defendant refused to provide any further information and also refused to allow a tape recording of his statement. He did agree to allow Hauman to come in and have Moser reiterate the statement for Hauman to hear. Moser then brought in Hauman, reiterated the story and asked the defendant to verify that he had reiterated it correctly. The defendant indicated that Moser had properly summarized his statement. Moser further testified that he did not promise, threaten or coerce the defendant in any way and that the defendant never asked to invoke any of his *Miranda* rights.

On cross-examination, Moser conceded that he made up facts re-

garding the evidence at the crime scene. There were no footprints or fingerprints. There was no camera or picture of the defendant committing the crime. Moser also conceded that he planted the idea in the defendant's mind that the attendant was going for a gun. Moser suggested that the defendant shot to protect himself. Additionally, Moser conceded that the information about the necessity of the trajectory to assist in medical treatment was fabricated.

Hauman then testified, corroborating Moser's testimony regarding the interrogation. Hauman indicated that after he heard the defendant verify Moser's reiteration, he asked the defendant some questions and the defendant pointed out on a map where he had disposed of the gun. The gun was never recovered. Hauman also testified that he did not promise, threaten or coerce the defendant in any way and that the defendant never asked to invoke any of his *Miranda* rights.

The defendant testified that he signed the waiver form but did not know what it meant. He testified that Moser told him that the form recognized that the two had talked about the incident. The defendant testified that he told Moser that he did not have a statement to make and that he wanted to go to court.

The trial court denied the motion to suppress. The court held that there wasn't any evidence that the defendant's statements were coerced or not voluntary.

At trial, the manager and the store customer testified. Additionally, two women testified that they saw the defendant standing outside the store at 3:30 to 3:45 p.m. on August 11, 1988. About 20 minutes later a neighbor of one of the women asked if they would drive the defendant to his sister's house. They agreed and took a route that went past the store where police were investigating the shooting. Both witnesses testified that as they drove past the store, the defendant ducked down in the back seat and admitted that "he did it."

A crime-lab serology expert testified that he found traces of human blood on the shoes the defendant was wearing the night he was arrested. The expert conceded that he could not identify the blood and that it could have been the defendant's blood.

The defendant took the stand and denied any involvement in the crime. The defendant claimed that he only purchased a soda that day in the store. He claimed that another man committed the offense and that he ducked down in the car because he was wanted on a previous arrest warrant. The defendant explained the blood on his shoes was from an incident earlier in the week. The defendant denied making inculpatory statements to the police. The State's cross-examination consisted of asking the defendant if he thought each of the State's witnesses had lied.

As indicated earlier, the jury returned guilty verdicts on both counts. The defendant appeals, raising three issues for our consideration.

The defendant first contends that the trial court erred in failing to suppress his confession. The defendant maintains that the confession was the direct result of the police interrogator's lies regarding nonexistent evidence that defendant was told linked him to the crimes.

■ A trial court's ruling denying a defendant's motion to suppress his confession will not be reversed on appeal unless it is contrary to the manifest weight of the evidence. (*People v. Schultz* (1981), 99 Ill. App. 3d 762, 777, 425 N.E.2d 1267.) The determination depends on the totality of the circumstances, with consideration given to both the individual characteristics of the accused and the details of the interrogation. *People v. Cleesen* (1988), 177 Ill. App. 3d 103, 110, 531 N.E.2d 1113.

In regard to the individual characteristics, the relevant factors to be considered are the age, education, mental capacity, emotional characteristics, previous experience with the criminal system and whether the confession was induced by police deception. (*In re T.S.* (1986), 151 Ill. App. 3d 344, 350, 502 N.E.2d 761.) Additionally, this court has indicated that special care in scrutinizing the record is required when the defendant is young and has a diminished mental capacity. *People v. Smith* (1989), 178 Ill. App. 3d 976, 983, 533 N.E.2d 1169.

In regard to the details of the interrogation, the factors to consider include the duration of the questioning, whether the defendant received his rights and whether he was subjected to physical punishment. *In re T.S.* (1986), 151 Ill. App. 3d 344, 350, 502 N.E.2d 761.

■ We are of the opinion that the trial court erred in failing to suppress the defendant's confession. The record indicates that the defendant was 17 years of age at the time of the interrogation. The defendant had been twice tested regarding his intelligence level. One test revealed that he was in the "high average range of the severely retarded classification." A subsequent test described the defendant as "borderline mentally retarded." The psychiatric expert at the fitness hearing opined that the defendant had "borderline intelligence." At a minimum, then, it is apparent that the defendant had a diminished mental capacity. The defendant's educational history was poor. He had behavioral problems while a student at various schools. Although he had some educational and vocational training while in the custody of the Illinois Department of Corrections, his formal education stopped at the age of 14.

The police interrogator admitted that his questions in regard to footprints and fingerprints were without an evidentiary basis. Additionally, he lied about the security camera. The interrogator also suggested the

self-defense theory to explain why the defendant shot the manager and concocted the story regarding the trajectory as being necessary to help the medical personnel aid the victim.

It is true that the defendant was "street wise" and had previous experiences with criminal law. It is also true that the interrogation was not of a long duration, nor were the interrogators physically abusive toward the defendant. Nonetheless, we feel that, when viewed in light of all of the circumstances, it cannot be said that this was a voluntary and knowing confession as required by *Miranda*. Accordingly, we are of the opinion that the trial court should have granted the defendant's motion to suppress his inculpatory statements.

■ We also are of the opinion, however, that this case need not be reversed due to this error. The United States Supreme Court, in *Chapman v. California* (1967), 386 U.S. 18, 22, 17 L. Ed. 2d 705, 709, 87 S. Ct. 824, 827, stated "there may be some constitutional errors which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction." We are convinced that the suppression of the defendant's confession would have had no bearing on the jury's determination of guilt. We have carefully reviewed the record and find that the evidence is overwhelming that the defendant committed these crimes.

The defendant next contends that the prosecutor's cross-examination was improper and denied the defendant a fair jury determination of his guilt or innocence.

■ In order to preserve a question for appellate review, both an objection at trial and a written post-trial motion raising the issue are required. (*People v. Enoch* (1988), 122 Ill. 2d 176, 198-99, 522 N.E.2d 1124.) We have examined the record and find that the defendant waived any alleged error in the prosecutor's cross-examination.

■ The defendant's last issue requests this court to reduce the defendant's 30 year-prison terms. The defendant alleges that the trial court focused only upon the seriousness of the defendant's conduct and previous record and failed to consider mitigation in the cause.

We find the defendant's issue to be without merit. We thus affirm the sentences imposed by the trial court.

The judgments of the circuit court of Rock Island County are affirmed.

Affirmed.

BARRY and SCOTT, JJ., concur.