THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERT LIDDELL, Defendant-Appellant.

First District (1st Division)   No. 1—91—2713

Opinion filed December 21, 1992.

MANNING, J., specially concurring.

Rita A. Fry, Public Defender, of Chicago (Kim L. Sorrells and Donald S.
Honchell, Assistant Public Defenders, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Veronica
X. Calderon, and Michelle R. Martone, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:

A jury found defendant Robert Liddell guilty of the murder, kidnapping and unlawful restraint of decedent Frank Lane. Defendant was sentenced to 24 years in the Illinois Department of Corrections. Defendant appeals his conviction, arguing that he was denied a fair trial because the circuit court refused his tendered jury instructions and the State made prejudicial and inflammatory comments during rebuttal closing arguments which were allegedly designed to arouse the prejudice and passions of the jury. We affirm.

George Wills testified on behalf of the State. Wills testified that he was a close friend of decedent for the past seven years. On June 7, 1987, at approximately 9:30 p.m., Wills, decedent and Berlman Manley went to an outdoor basketball court located at 72nd Street and Dobson Street. Decedent and Manley participated in a basketball game while Wills worked on his car. After about 20 minutes of playing basketball, Manley approached Wills and told him that decedent was involved in a verbal argument. Soon the argument broke up, the basketball game resumed and Wills continued to work on his car. Later, Wills saw decedent talking with Maurice Jackson off the basketball court. Wills approached decedent and suggested that they leave. Decedent agreed and went towards defendant's car to retrieve his hat.

Approximately 10 minutes thereafter, Wills saw Manley running away from a person brandishing an aluminum baseball bat. Wills later learned that the person pursuing Manley was Kirk Cole. Then, Wills observed decedent being forced into the back of a station wagon. Wills saw decedent attempting to escape from the car, but men were holding him by the seat of his pants. Wills picked up Manley in his car and followed the station wagon. The station wagon stopped in an alley at Kimbark and 62nd Streets. Wills testified that he saw three to four men in the wagon. As Wills pulled his car up the alley, all the men fled in separate directions and the driver of the station wagon pulled away. Wills then observed decedent lying unconscious on the ground in a fetal position. Wills and Manley took decedent to South Chicago Hospital, where he died.

Next, Detective Thomas Kelly testified that on June 14, 1987, he and his partner, Detective Ward, were assigned to conduct an investigation of decedent's homicide. Kelly and Ward along with two other detectives went to decedent's mother's, Augustine Lane's, home. Augustine claimed that a woman named Denise Manuel might have information regarding her son's death. The detectives attempted to lo-

cated Manuel, but failed. The detectives then returned to Augustine's home and found Manuel there. After speaking with Manuel, the detectives went to seven different locations in an attempt to find witnesses to the homicide.

After Kelly returned to Area One Violent Crimes, Kirk Cole arrived to speak to the police with his mother and defendant. Kelly read Cole his *Miranda* rights. Cole indicated that he wished to speak with the police. At the conclusion of the interview, Cole was placed under arrest for the murder of decedent. Cole implicated defendant in the murder. Defendant, therefore, was also placed under arrest while waiting in the police station.

Kelly then read defendant his *Miranda* rights. Defendant acknowledged that he understood those rights, but wished to waive them. Defendant told the detectives that he had seen Cole chasing Manley with a baseball bat, but Cole was unable to catch up with him so he came back to the station wagon. Theodis Houston, Larhone Miles, Marcus Anderson, Maurice Jackson and Cole requested that defendant come over to the car. Jackson had decedent in a headlock. The group forced decedent into the back of the station wagon. Miles was driving the car, and Cole was in the front passenger seat. Defendant admitted that as the car began to pull away he was holding down decedent's left leg. Defendant stated that he used his right fist to strike decedent's upper body and ribs while Houston was hitting decedent with a bottle. Anderson and Jackson were also striking decedent.

Defendant further explained to the detectives that the group drove to an alley at 62nd and Kimbark. Defendant and the others exited the car while decedent was still in the rear. Defendant admitted taking an aluminum bat and striking decedent's head. Jackson then took the bat from defendant and struck decedent four or five times in the head while defendant watched. Then defendant and the others separated on foot while Miles drove the station wagon away from decedent's body. A short time later they regrouped.

Defendant repeated this account in the presence of Kelly to Assistant State's Attorney Leighton. Defendant also gave a court-reported statement which was substantially the same as above. In addition to corroborating Kelly's testimony regarding defendant's statements, Leighton testified that defendant never said he hit decedent in self-defense or in defense of others. Furthermore, defendant never told Leighton he was holding onto decedent's left leg in the car to prevent decedent from grabbing the steering wheel.

Last, Dr. Michael Chambliss, a medical examiner for Cook County who performed a postmortem examination on decedent, testified for the State. Chambliss testified that the cause of decedent's death was a brain hemorrhage and linear skull fracture. Chambliss further testified that the injuries were due to blunt trauma which is consistent with someone striking decedent with a baseball bat.

Defendant testified on his own behalf at trial. Defendant's testimony corroborates Wills' and Kelly's testimonies until the point at which decedent was in the station wagon. Thereafter, defendant claims that decedent became "wild" and "emotional." Defendant explained that decedent began "climbing over the seats, the passenger seats, the back seats, the front seat, and was grabbing at the driver." When decedent grabbed at the driver, defendant grabbed him and pushed him back in the hatchback because he claims he was allegedly afraid that decedent would obstruct the driver and cause an accident.

Defendant further testified that they drove to 62nd and Kimbark. Everyone exited the car except decedent, Jackson and Miles. As defendant exited the station wagon, Cole handed him a baseball bat. While at the rear of the car, defendant saw Jackson and decedent fighting. Then, defendant saw Wills' car approaching. Defendant testified that he thought Wills and Manley were coming after him and his friends, so he wanted to free Jackson from decedent; therefore, he swung the bat at decedent, hitting him in the head. Defendant testified that after he hit decedent, he fled.

Additionally, defendant testified that he went to the police station with Cole and Cole's mother on June 14, 1987, because he wondered why Cole was being questioned. After being arrested, defendant spoke with the police. Defendant claimed that he never told the police why he held decedent's leg while in the station wagon, hit decedent with his fist and hit decedent with the bat because the police never asked about these matters.

On cross-examination, defendant testified that Jackson was approximately 5 feet 7 inches, weighing 170 pounds, Houston weighed 160 pounds, and Anderson was about 6 feet tall, weighing about 220 pounds. Defendant denied that decedent had been continually beaten for the almost 10-block ride to the alley where he was left. Defendant testified that after using a baseball-type swing to strike decedent in the head with the baseball bat, decedent fell to the ground and just lay there. Jackson, then, took the bat from defendant and hit decedent with the bat using a golf-type swing, while defendant did nothing to prevent Jackson from hitting decedent. Defendant did not know if

decedent was unconscious after he had initially struck him with the baseball bat.

Defendant first argues that the trial court erred in refusing defendant's tendered jury instructions on battery, aggravated battery and reckless conduct. The State argues that the circuit court's refusal was proper because the evidence established that defendant was accountable for decedent's murder and because the evidence was not sufficient to justify giving those instructions to the jury. We agree with the State.

*People v. Balls* (1981), 95 Ill. App. 3d 70, 419 N.E.2d 571, is analogous to the instant case. In *Balls*, the defendant admitted to stabbing the decedent once in the side. The defendant contended that someone else inflicted the other wounds, including the fatal wound of the face and neck. The defendant, thus, argued that he could only be guilty of aggravated battery. (*Balls*, 95 Ill. App. 3d at 75, 419 N.E.2d at 575.) The appellate court held that the tendered instructions on battery and aggravated battery were properly refused because the evidence did not justify the submission of those instructions. (*Balls*, 95 Ill. App. 3d at 74, 419 N.E.2d at 575.) The appellate court explained that although battery and aggravated battery may be included offenses of murder, in order to give an instruction on the included offenses, the evidence must be sufficient to permit a finding of not guilty on the greater offense but guilty on the included offense. (*Balls*, 95 Ill. App. 3d at 74-75, 419 N.E.2d at 575.) The *Balls* court found that the evidence would not support a finding of not guilty on the murder charge but guilty on the included offense of aggravated battery. *Balls*, 95 Ill. App. 3d at 75.

■ Similarly, in *People v. Sanders* (1984), 127 Ill. App. 3d 471, 469 N.E.2d 287, the defendant argued that an instruction for battery or aggravated battery was warranted because the evidence indicated that none of the blunt trauma injuries were sufficient to induce the decedent's death and that the decedent died as a result of ligature strangulation. (*Sanders*, 127 Ill. App. 3d at 477-78, 469 N.E.2d at 292.) The appellate court held that the evidence left no doubt that a dangerous weapon was used, and therefore, the battery was at least aggravated battery. The court further held that since aggravated battery is a forcible felony, and the victim died as a result, the defendant was guilty of at least felony murder. (*Sanders*, 127 Ill. App. 3d at 478, 469 N.E.2d at 292-93, citing Ill. Rev. Stat. 1981, ch. 38, pars. 12—3, 12—4, 9—1(a).) The same is true in the case at bar. Defendant used a dangerous weapon, namely a baseball bat, thereby elevating the battery to an aggravated battery. Further, the aggravated battery being

a forcible felony, and decedent dying as a result of that aggravated battery, defendant would be guilty of murder. In other words, defendant could not be found guilty of battery or aggravated battery without also being found guilty of murder. (See *Sanders*, 127 Ill. App. 3d at 478, 469 N.E.2d at 292.) Accordingly, the circuit court properly denied defendant's tendered instructions on battery and aggravated battery.

■ Now turning to whether an instruction on "reckless conduct" should have been given, we agree with defendant that the Illinois Supreme Court stated in *People v. Bryant* (1986), 113 Ill. 2d 497, 499 N.E.2d 413, that an instruction on a lesser included offense is appropriate if the evidence would permit the trier of fact to rationally find the defendant guilty of the lesser offense and acquit him of the greater. In the case at bar, however, there was no evidence that defendant's actions were "reckless." Defendant admitted that he deliberately struck decedent's head with a bat, which was determined to be consistent with the cause of decedent's death. Moreover, defendant never called the police or an ambulance. Defendant failed to show any credible evidence that his conduct was reckless; thus, the circuit court properly denied defendant's tendered instruction on reckless conduct.

■ Finally, defendant contends that the State's following statements during closing rebuttal argument denied him his right to a fair trial.

"You saw the defendant testify yesterday. He was in a suit and a tie. He looked good. Did you ever hear a story of the wolf in sheep's clothing?

＊ ＊ ＊

The funny thing about wolves, they not only like to wear a lamb's clothing; they like to run in packs."

Relying on *People v. Johnson* (1987), 119 Ill. 2d 119, 139, 518 N.E.2d 100, 109-10, defendant argues that the Illinois Supreme Court found that it is "improper to characterize a defendant as an 'animal,' even where that characterization is based on the evidence." In *Johnson*, the State argued that "[f]our of those people were butchered by an animal, and that animal is among us today, and he sits right there. (Indicating.)" (*Johnson*, 119 Ill. 2d at 139, 518 N.E.2d at 109-10.) The State actually referred directly to defendant as an "animal." In the instant case, the State was merely attempting to persuade the jurors to not be deceived by defendant's appearance during trial. The State further commented that defendant and his friends/accomplices liked to run in a "pack." The State explained that defendant and his accomplices beating decedent to death was a "team effort." The reference

to "pack" was to convey to the jurors that defendant was part of a group working in concert with one another. The State's comments during closing rebuttal argument were not improper.

For the foregoing reasons, the conviction of the circuit court of Cook County is affirmed.

Affirmed.

CAMPBELL, J., concurs.

JUSTICE MANNING specially concurs:

While I agree with the result reached here today, I disagree with the majority's view that it was not error to liken defendant to wolves. The implication in the prosecutor's argument was that this defendant behaved like a wolf, running in packs. This is no different than directly calling a defendant an animal. Nothwithstanding my disagreement with the majority, I do not view this error, under the facts of this case, to be reversible error since the evidence of defendant's guilt was substantial. Hence, I agree that affirmance is warranted.