THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. AUGUSTINE M. TORRES, Defendant-Appellant.

Third District   No. 3—95—0278

Opinion filed August 30, 1996.

David L. Cunningham (argued), of Winstein, Kavensky & Wallace, of Rock Island, for appellant.

Marshall E. Douglas, State's Attorney, of Rock Island (John X. Breslin and J. Paul Hoffmann (argued), both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MICHELA delivered the opinion of the court:

A jury convicted Augustine Torres of aggravated battery (720 ILCS 5/12—4(b)(1) (West 1994)) and first degree murder (720 ILCS 5/9—1(a)(1) (West 1994)). Torres appeals his convictions, arguing that (i) the trial court erred when it denied his motion to quash his arrest; (ii) the trial court erred when it denied his motion to suppress his inculpatory statements; (iii) the trial court erred when it interrupted defense counsel during closing argument; (iv) the trial court erred when it denied Torres' request for involuntary manslaughter and aggravated battery jury instructions; (v) Torres received the ineffective assistance of counsel at trial; and (vi) the trial court abused its discretion in sentencing Torres to concurrent terms of 40 years' incarceration for first degree murder and 5 years' incarceration for aggravated battery. We disagree and, for the following reasons, affirm the convictions.

On October 1, 1994, the 16-year-old defendant, Augustine "Augie" Torres, and Jamie "Boomer" Lopez and Anthony "Tony" Olvera drove past Chad Van Klavern and Craig Jordan as they crossed 12th Avenue to 26th Street in the City of Moline. Olvera testified that Lopez was provoked when Van Klavern and Jordan gestured at their passing car and that Lopez wanted to scare Van Klavern and Jordan by "jumping" them. Lopez asked the defendant if he wanted to "jump" Van Klavern and Jordan too and, although he did not see the gesture, he agreed. When the car caught up with Van Klavern and Jordan, Lopez instructed Olvera to drive down an alley, park and turn the car's headlights off.

Lopez then grabbed "The Club," disassembled it into two pieces and gave the defendant the smaller piece while he kept the larger piece that contained the locking mechanism. Lopez opened the car door, the defendant followed, and Lopez directed him to crouch as they hid by a concrete retaining wall. Jordan and Van Klavern continued walking toward the intersection of 26th Street and 11th Avenue B when Jordan looked to his left and saw two people squatting by a concrete wall who then rushed him and Van Klavern.

The defendant testified that Lopez made the first rush and attempted to strike Jordan but the swing did not connect and Lopez then attacked Van Klavern. The defendant joined the fray, using his fists to strike Jordan, but testified that he felt sorry for Jordan and stopped beating him. The defendant testified that he then watched Lopez and Van Klavern and saw Lopez bring "The Club" down on Van Klavern's head, heard Van Klavern screaming, then moaning, but offered no resistance. The defendant testified that he grew scared of Lopez and the wild and crazy way in which Lopez was acting and

he screamed, to no avail, for Lopez to stop. The attack ended when two neighbors yelled and Lopez and the defendant went to the waiting automobile, deposited their portions of "The Club" in the automobile and drove away.

Moline police officer Timothy Krakovec was dispatched at 12:38 a.m. on October 2, 1994, to 26th Street and 11th Avenue B. Krakovec summoned medical help and Van Klavern was transported to the Trinity Medical Center trauma unit and placed on life support; however, he died a short time later. Jordan left the scene and went home, where his foster mother called an ambulance, and Jordan was taken to Trinity Medical Center. Krakovec spoke with Jordan at the hospital and Jordan gave a description of Olvera's car which was broadcast over the Illinois State Police Emergency Response Network.

At 3:30 p.m. on October 2, 1994, an anonymous crime-stoppers tip to the Moline police department regarding the incident led Lieutenant Steven Brockway of the Moline police department to instruct trained Moline juvenile police officers Ricky Hodge and Matt Sottos to bring the defendant in for questioning. Hodge and Sottos arrived at the Torres family residence between 6 and 6:15 p.m., where Hodge spoke with the defendant's father. Upon learning that the defendant was home, Hodge requested and received permission to speak with him and examine his room. Hodge knew that Van Klavern had died earlier in the day and that the defendant was a possible suspect in a homicide investigation but did not communicate this fact to the defendant, his parents or to Sottos.

Instead, Hodge told the parents that the police needed to speak with the defendant at the police station about an incident that happened in the early morning hours of October 2, 1994. Mrs. Torres asked if her son had done anything wrong and Hodge replied "no." The parents then asked whether they should accompany the defendant to the police station and Hodge answered that while they could come to the police station, it was not necessary because the police would bring him home when the questioning was completed.

Meanwhile, Sottos was speaking with the defendant and obtained his agreement to come to the police station to discuss an incident that happened in the early morning hours. Mrs. Torres asked to speak with the defendant before he left for the police station and was permitted to do so. Mrs. Torres spoke to her son in Spanish and when she was through he left for the police station. Sottos gave the defendant verbal and written *Miranda* warnings in the police car, but no questioning took place during the three- to five-minute ride to the police station. Upon arriving at the police station at approximately 6:40

p.m., the defendant was taken to the second floor and seated in an interview room and given *Miranda* warnings once more at 7:09 p.m. Defendant indicated that he understood his rights and gave an oral statement that implicated him in the beating and death of Van Klavern and the beating of Jordan. After completing the oral statement, the defendant was told that Van Klavern had died and that he was under arrest and, at 7:50 p.m., he agreed to make a written statement.

The defendant's parents were worried when their son was not returned to them by the police, and they went to the police station, arriving at 8 p.m. Mrs. Torres stated she wished to speak with her son and eventually Lieutenant Brockway took both parents to a second-floor conference room, where he told them their son was being interviewed about a beating incident that happened in the early morning hours. Brockway did not tell the parents that their son was being interviewed about a homicide investigation but instead said that when the police "knew [what] the situation [was] with [the defendant]," the police would then be in touch with the parents. Brockway then asked them to wait in the conference room since the police were still in the process of interviewing their son.

After the defendant's oral confession, Hodge left the interview room to tell Brockway that a confession had been obtained. Brockway then instructed Hodge to tell the parents that their son had confessed and the police would be contacting the State's Attorney's office regarding possible charges. Defendant was charged with two counts of first degree murder (720 ILCS 5/9—1(a)(1) (West 1994)) and two counts of aggravated battery (720 ILCS 5/12—4(b)(1) (West 1994)). Defendant pled not guilty, requested a trial by jury and was subsequently convicted of the first degree murder of Van Klavern and the aggravated battery of Jordan. The defendant appeals both convictions.

Defendant first argues that when he was taken to the police station for questioning he was arrested without probable cause, and he requests that his arrest be quashed and his confession suppressed as the fruit of an illegal arrest. The State counters this argument by claiming that the defendant was not arrested because he voluntarily consented to accompany the police to the station and agreed to submit to police questioning and was not placed under arrest until he implicated himself with an oral confession. Alternatively, the defendant argues that his consent to accompany the police and submit to police questioning was vitiated by an act of police subterfuge designed to obtain his and his parents' consent. Following a pretrial hearing on the defendant's motion to quash his arrest and suppress his

inculpatory statements, the trial court ruled that defendant was not under arrest when he agreed to accompany the police to the police station for questioning and that his inculpatory statements were voluntarily made. The trial court's decision will not be disturbed on appeal unless it is against the manifest weight of the evidence. *People v. Clay*, 124 Ill. App. 3d 140, 148, 463 N.E.2d 929, 936 (1984).

■ The point of view of what "a reasonable man, innocent of any crime, would have believed given the same circumstances" (*Clay*, 124 Ill. App. 3d at 148, 463 N.E.2d at 936) is examined to determine whether an arrest has occurred. Additionally, the detaining officer's intent to make an arrest is examined through observing whether a formal declaration of arrest was made, whether the detainee was handcuffed, whether the detainee was fingerprinted, and whether the detainee was photographed. *Clay*, 124 Ill. App. 3d at 148, 463 N.E.2d at 936. Finally, an arrest has occurred if a reasonable person detained by the police believes he is not free to leave. *People v. Selby*, 241 Ill. App. 3d 80, 83, 608 N.E.2d 961, 963 (1993).

■ Upon a review of the record, it is apparent that the defendant was under no compulsion to accompany the police and was free to leave the police station prior to making his oral confession. There is no indication that the police subjected him to subtle coercion, threats of force or other improprieties to induce him to remain at the police station prior to making his oral confession. Additionally, he was not handcuffed or fingerprinted and was twice given *Miranda* warnings; nor was a formal declaration of arrest made until his oral statement was taken. Moreover, Brockway testified that the defendant was free to leave at any time and conceded that, without the defendant's voluntary consent to accompany the police, he could not have been detained because the anonymous tip to the police did not provide a sufficient constitutional basis to make a seizure or an arrest. We find that the defendant was not illegally detained when he accompanied the police because, "[w]here a defendant is simply asked to accompany officers without threats or show of force[,] there is no impermissible seizure of the individual." *People v. Patton*, 90 Ill. App. 3d 263, 266, 412 N.E.2d 1097, 1100 (1980).

■ Alternatively, defendant argues that even if a seizure or arrest did not occur when the police requested his presence at the police station, his consent to accompany the police was vitiated by a deliberate act of police subterfuge when the police ostensibly stated they wanted to question him about a street fight when he was actually being questioned regarding a homicide investigation. We disagree. At the suppression hearing, the defendant testified that when the police said they wanted to question him about an incident that

happened in the early morning hours he knew the police were referring to the street fight involving Van Klavern and Jordan. Defendant then admitted to the police during initial questioning at the police station that he believed Lopez's beating of Van Klavern was possibly fatal. Thus, although the police banally stated that they wanted to question the defendant about an incident that happened in the early morning hours, he was cognizant that this questioning could encompass a fatality resulting from the street fight.

We acknowledge that the record lends credence to the defendant's argument that the police engaged in an act tantamount to subterfuge by withholding information on the exact nature of the police questioning when seeking both parental permission and his agreement to accompany the police (*People v. Arias*, 179 Ill. App. 3d 890, 896-97, 535 N.E.2d 89, 93 (1989)); however, this act of subterfuge does not offend constitutional precepts (*People v. Prude*, 66 Ill. 2d 470, 475-76, 363 N.E.2d 371, 373 (1977)). We therefore affirm the trial court's ruling that the defendant was not under arrest when he accompanied the police to the police station.

■ Defendant next argues that the trial court erred in denying his motion to suppress his confession on the ground that under the totality of the circumstances it was an involuntary statement. We first address the State's concern that the defendant has waived this argument on appeal because it was not raised in his post-trial motion. *People v. Brown*, 252 Ill. App. 3d 377, 384, 625 N.E.2d 100, 105 (1993). While technical waiver exists, the record reveals that this issue was presented to the trial court through the defendant's written motion to suppress which resulted in an evidentiary hearing. Thus, we deem the issue properly preserved for our review and will consider the propriety of the trial court's decision on appeal. See *People v. Dickerson*, 69 Ill. App. 3d 825, 828, 387 N.E.2d 806, 809 (1979). Accordingly, the trial court's decision that the State proved by a preponderance of the evidence that the statements were voluntary will not be disturbed on appeal unless the decision is against the manifest weight of the evidence. *People v. Bobe*, 227 Ill. App. 3d 681, 592 N.E.2d 301 (1992).

■ Confessions made by juvenile and adult defendants are subject to the same test to determine voluntariness, *i.e.*, "whether, under the totality of the circumstances, the statement was made freely, without compulsion or inducement of any sort, with consideration given to the characteristics of the accused as well as the details of the interrogation." *People v. Knox*, 186 Ill. App. 3d 808, 812, 542 N.E.2d 910, 913 (1989). Additionally, Illinois law does not afford a juvenile suspect the *per se* right to consult with a parent prior to police interrogation

or during such interrogation. *In re S.D.S.*, 103 Ill. App. 3d 1008, 1012, 431 N.E.2d 759, 762 (1982). However, where a parent's presence indicates her interest to confer with her child before or during police interrogation, she should then be allowed the opportunity to meet with her child. *In re S.D.S.*, 103 Ill. App. 3d at 1012, 431 N.E.2d at 763. We agree that:

> "[Police] officers who know of the parent's presence have an affirmative duty to inform those actually questioning a juvenile of the parent's presence and request to see her child. And, in order to ensure the true voluntariness of a statement, those actually questioning the juvenile have an affirmative duty to stop the questioning and allow the parent to confer with her child." *People v. Brown*, 182 Ill. App. 3d 1046, 1053-54, 538 N.E.2d 909, 913 (1989).

Mrs. Torres' request to see her son, coupled with both parents' presence at the police station, indicated their desire to confer with their son. Brockway asserts that the parents would have been allowed to see their son had they asked; yet, he admits he did not tell them that they could see him and further admits that he did not make the defendant "available" to his parents because "officers were talking to him." Brockway was in the position to discharge the affirmative duty imposed upon the police to allow a parent to confer with her child, if she so desires, during police questioning. The police breached their duty to allow the defendant's parents to confer with him during police questioning and this factor is properly considered when assessing the voluntariness of his confession. *Brown*, 182 Ill. App. 3d at 1053, 538 N.E.2d at 913.

■ Defendant next attacks the voluntariness of his confession on the ground that his consent to accompany the police and submit to police interrogation was obtained through an act of subterfuge when the police withheld the fact that he was a suspect in a homicide investigation. As discussed above, the defendant's consent to accompany the police is not vitiated by the subterfuge employed by the arresting officers. The appropriateness of police subterfuge while conducting a criminal investigation involving a juvenile suspect has been both condoned (*Arias*, 179 Ill. App. 3d at 896-97, 535 N.E.2d at 93) and condemned (*People v. Bridges*, 198 Ill. App. 3d 534, 538-39, 555 N.E.2d 1191, 1194 (1990)). However, it is axiomatic that a criminal suspect does not have the right to be informed of the criminal offense or potential criminal offenses for which he may be charged when questioned by the police. *Prude*, 66 Ill. 2d at 475-76, 363 N.E.2d at 373.

The record establishes that during police questioning the defen-

dant was not abused, threatened, denied physical comforts or questioned while under the influence of drugs or alcohol, had received 10 years of education and appeared to be of average intelligence. Additionally, the defendant ably executed a waiver of his constitutional rights and did not invoke his right to counsel or request to speak with his parents during the course of the police interrogation. The record, however, also establishes that the police breached their duty to allow the defendant's parents to confer with their minor child during police questioning. Thus, factors exist which may render the defendant's inculpatory statements subject to suppression; however, we ultimately decline to reverse the trial court's decision to deny the motion to suppress defendant's inculpatory statements based on the harmless error rule enunciated in *Chapman v. California*, 386 U.S. 18, 22, 17 L. Ed. 2d 705, 710, 87 S. Ct. 824, 827 (1967); *Bridges*, 189 Ill. App. 3d at 539, 555 N.E.2d at 1194.

■ Defendant next argues that the trial court committed reversible error when it interrupted defense counsel during closing argument. At trial, the State argued that the defendant was criminally liable for the death of Van Klavern under a theory of accountability (720 ILCS 5/5—2 *et seq.* (West 1994)) and, alternatively, a theory of direct participation. The defendant argued he was not guilty of the first degree murder of Van Klavern and the following exchange ensued between the trial court and defense counsel during closing argument:

"MS. McBRIDE [Defense Counsel]: My point, ladies and gentlemen, is that Augie Torres intended a battery, not a murder. Murder was *** not a part of his plan, and you are not legally obligated to hold all the boys responsible for that.

THE COURT: Okay. The Court feels compelled to make a comment here. Miss McBride has argued the law and she's argued incorrectly. You are—You intend the natural consequences of your act when you[ ] perform a criminal act. Okay. Proceed."

The record indicates that the defense did not make a trial objection to this alleged error and has therefore failed to preserve this issue for appellate review. *People v. Young*, 248 Ill. App. 3d 491, 498, 618 N.E.2d 1026, 1032 (1993). However, the waiver rule is relaxed when the ground for error is judicial misconduct. *Young*, 248 Ill. App. 3d at 498, 618 N.E.2d at 1032. Accordingly, although procedural defects exist, we will consider this issue on appeal. *Young*, 248 Ill. App. 3d at 498, 618 N.E.2d at 1032.

■ A criminal defendant bears the burden of demonstrating a trial court's comments constitute reversible error by showing that the comments were a material factor in the conviction or were such

that an effect on the jury's verdict was the probable result. *Young,* 248 Ill. App. 3d at 501, 618 N.E.2d at 1034. In the case at bar, the defendant argues the trial court's comments were indistinguishable from a judicial directive to the jury to ignore the defense's theory of the case and therefore constitute a material factor in reaching a guilty verdict. We do not agree that the trial court's comments were improper when the trial court's comments were a proper statement of the law.

Under the theories of accountability and the common-design rule, the law holds all parties to a common criminal design or agreement equally responsible for the consequences of those acts committed by either party in furtherance of the common criminal design or agreement. 720 ILCS 5/5—2(c) (West 1994); *In re W.C.,* 167 Ill. 2d 307, 337-38, 657 N.E.2d 908, 923-24 (1995). As the trial court noted, all the parties to a common criminal design or agreement are legally responsible for the unintended and intended consequences of each party's act. Accordingly, we find the trial court's comments do not rise to the level of reversible error.

■ Next, defendant argues that the trial court erred in refusing to give an involuntary manslaughter jury instruction. Illinois Pattern Jury Instructions, Criminal, No. 7.07 (3d ed. 1992), states:

"A person commits the offense of involuntary manslaughter when he unintentionally causes the death of an individual [without lawful justification] by acts which are performed recklessly and are likely to cause death or great bodily harm to another."

The State argues that the trial court correctly decided that an involuntary manslaughter instruction was unnecessary because no evidence adduced at trial supported the defense theory that the death of Van Klavern was the result of reckless or inadvertent behavior. We agree. Generally, slight evidence upon a given theory of a case which would serve to reduce the charged offense to a lesser offense justifies instructing the jury on that lesser offense. *People v. Martinez,* 242 Ill. App. 3d 915, 927, 611 N.E.2d 1027, 1034-35 (1992). In the instant case, the jury was instructed on murder, which has a mental state differing from involuntary manslaughter in that one commits involuntary manslaughter by committing an act causing the death of an individual through reckless or inadvertent conduct. *Martinez,* 242 Ill. App. 3d at 927, 611 N.E.2d at 1035. Murder, however, requires that a defendant have the intent to kill or cause great bodily harm or the knowledge that his actions create a strong probability of this result. *Martinez,* 242 Ill. App. 3d at 927, 611 N.E.2d at 1034-35.

■ The trial court reasoned that the evidence established Van

Klavern died because of intentional conduct, specifically, because of blows struck by the defendant or by one for whose conduct he was responsible, and concluded that an involuntary manslaughter instruction was inappropriate. Without passing on the sufficiency of the evidence, the record indicates that eyewitness testimony maintained that two people beat Van Klavern, supporting the State's theory of the defendant's direct participation and inferentially indicating the defendant's intentional conduct. Alternatively, under the theory of accountability (720 ILCS 5/5—2(c) (West 1994)), even if the defendant did not strike Van Klavern, as he testified to at trial, he was still legally responsible for the consequences of the acts performed by Lopez, particularly when the evidence adduced at trial tended to show that Lopez performed acts evidencing an intent to kill or cause great bodily harm to Van Klavern in furtherance of a common criminal design. See *People v. Friday*, 232 Ill. App. 3d 1047, 598 N.E.2d 302 (1992). Under these narrow circumstances, we concur and uphold the trial court's decision that the evidence presented at trial did not justify instructing the jury on the offense of involuntary manslaughter.

■ Defendant also alleges that the trial court erred when it refused to tender the defense's proffered instruction of aggravated battery to the jury as a lesser included offense to the charge of murder. Aggravated battery is a lesser included offense of murder. *People v. Liddell*, 240 Ill. App. 3d 229, 233, 608 N.E.2d 278, 281 (1992). However, in order to justify the giving of the lesser included offense, the evidence must be sufficient to permit a finding of not guilty on the greater offense but guilty on the lesser included offense. *Liddell*, 240 Ill. App. 3d at 233, 608 N.E.2d at 281. The State directs our attention to *People v. Liddell* to illustrate that when an aggravated battery, a forcible felony, results in death, the jury cannot be instructed on both aggravated battery and murder because the defendant cannot be found guilty of aggravated battery without also being found guilty of murder. *Liddell*, 240 Ill. App. 3d at 233-34, 608 N.E.2d at 281. Consequently, we uphold the trial court's decision to refuse the tendered instruction of aggravated battery as a lesser included offense of murder.

■ Defendant next argues that he received the ineffective assistance of trial counsel because his trial counsel was possibly subject to an Attorney Registration and Disciplinary Commission investigation because of past and pending alleged misconduct constituting either a *per se*, potential or actual conflict of interest. We summarily reject this claim and agree with the State that we lack sufficient evidence from the record to grant any relief. The appellant bears the burden

of preserving a sufficient record for review and any doubts arising from an incomplete record will be resolved against the appellant. *People v. Hinton*, 249 Ill. App. 3d 713, 718, 619 N.E.2d 198, 202 (1993). The instant record is devoid of any reference to the defendant's trial counsel's past and pending misconduct and we are therefore unable to decide this issue.

Similarly, the defendant argues that he was denied the effective assistance of trial counsel when she allegedly failed to object to sleeping jurors, the absence of Hispanics from the jury venire and because several jurors saw him shackled. However, the record is barren of any trial objection or specific reference to these alleged errors. With nothing more than defendant's assurance that these errors occurred, the record is incomplete and we are unable to determine this issue. Consequently, we resolve these ambiguities in the record to the detriment of the defendant and decline to reach the question of the alleged ineffective assistance of his trial counsel.

■ We next address defendant's final argument that the trial court abused its discretion in sentencing him to concurrent terms of 40 years' and 5 years' incarceration following his convictions for murder and aggravated battery when it allegedly failed to consider his rehabilitative potential and the seriousness of the offense. Ill. Const. 1970, art. I, § 11; *People v. Newell*, 196 Ill. App. 3d 373, 553 N.E.2d 722 (1990). We have thoroughly reviewed the record and the trial court's assessment of the mitigating and aggravating factors as well as the supplementary material provided by family members, friends and associates. We are hard pressed to agree with the defendant that the trial court ignored the seriousness of the offense and his participation as well as his rehabilitative potential when the record firmly indicates otherwise. We uphold the trial court's decision and find that it did not abuse its discretion in sentencing the defendant to concurrent terms of 40 and 5 years of incarceration.

For the foregoing reasons, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

HOLDRIDGE, P.J., and McCUSKEY, J., concur.