THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ANGEL LOPEZ, Defendant-Appellant.

First District (5th Division)   No. 1—86—2409

Opinion filed March 23, 1989.

Michael J. Pelletier and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Inge Fryklund, Patricia Y. Brown, and Lauren E. Brown, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant Angel Lopez appeals from his conviction for voluntary manslaughter and subsequent five-year sentence. In October 1984, defendant was arrested in West Palm Beach, Florida, where he was living, and confessed to the 1978 killing of 17-year-old Roberto Melendez. After his arrest and questioning, he was returned to Chicago.

According to defendant's testimony, one evening in August 1978 he went to a Boys' Club after leaving work around midnight. Later he and two friends drove to "Latin King turf" and asked Roberto Melendez to sell them some marijuana. Melendez refused three times and then pulled out a gun, threatening to shoot. As defendant and his friends drove away, Melendez shot three times, hitting the car and windshield. Defendant states that he was scared and mad. The next day, fearing gang retaliation, defendant put his father's .22 rifle in the trunk of his car for protection. At the Boys' Club, defend-

ant was told that Melendez had threatened to get him.

Afterwards, as defendant drove through the Humboldt Park area on his way to work, he saw Melendez and several other persons, none of whom testified, on a porch with gang slogans painted on it. Melendez allegedly made an obscene gesture and drew a gun. Several blocks away, defendant stopped the car and retrieved the gun from the trunk, drove back past the house, and shot at the group three or four times "trying to scare him off." He stated that he was very frightened and had no intention of killing anyone. Melendez died several days later and defendant and his brother fled to Florida to escape gang retaliation. Shortly thereafter, defendant's family and girlfriend (now his wife) followed him to Florida for the same reason.

Defendant additionally testified that he was afraid of gangs in general and of "Mad Dog" Melendez in particular. He said that he had once hung around with a group called the "Latin Jivers" but had never been a gang member.

There was testimony from five witnesses, including defendant's Florida employer of four years, that he was a hard-working, honest family man who was peaceful and nonviolent. Defendant had no past criminal record. Melendez' father testified that the victim, a high school student, was not a gang member and had never been in trouble before. The State also introduced evidence indicating that "Mad Dog" Melendez and the victim were not the same person and that the victim had never been arrested.

Defendant was tried before a jury for murder. On cross-examination of defendant, the State questioned him about his failure to mention to the Florida authorities certain aspects relevant to his assertion of self-defense at trial. The jury was given instructions for murder, both types of voluntary manslaughter, and involuntary manslaughter, thereafter finding defendant guilty of voluntary manslaughter. Defendant was subsequently sentenced to five years' imprisonment.

On appeal, defendant contends that his due process rights were violated by the State's references to his post-arrest failure to state various details included in his trial testimony, that he was denied a fair trial by prosecutorial misconduct during closing arguments, and that he was improperly sentenced for several reasons. We affirm.

Defendant first argues that it was error for the State to refer to his post-arrest silence regarding his self-defense claim because there was no threshold inconsistency between defendant's testimony and his pretrial statement. The State contends that defendant's state-

ment, given in Florida, occurred *before* his arrest and, thus, there could have been no constitutional violation by the prosecutor's cross-examination regarding defendant's silence as to his later assertions of self-defense. However, we do not need to resolve this issue since we agree with the State that there were material inconsistencies between the Florida statement and defendant's trial testimony.

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, it was held that due process precludes impeachment by cross-examination of a defendant's exculpatory testimony offered for the first time at trial when he had failed to offer the explanation to the police after having been arrested and advised of his constitutional rights. However, an exception to this rule occurs if a defendant's exculpatory testimony is inconsistent with statements he made after being advised of those rights. (*Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180.) In other words, when a defendant does not remain completely silent after being advised of his *Miranda* rights, his failure to offer an exculpatory explanation may be used for impeachment purposes if it is inconsistent with later testimony. See *People v. Graves* (1986), 142 Ill. App. 3d 885, 492 N.E.2d 517.

Initially, we note that no objections to the questioning were made at trial and, further, that the record indicates no prejudice to defendant since the jury obviously believed his trial testimony in finding him guilty of voluntary manslaughter rather than murder. In any event, no error was committed. Defendant, after being advised of his *Miranda* rights, gave a half-hour voluntary statement to a West Palm Beach assistant State's Attorney in his courthouse office. In this statement, defendant said that he was mad and upset because his car had been shot at several nights before the killing and that the bullets had ricocheted off the car. He also told the investigator that, several days later, he saw the man who had shot his car, whereupon defendant grabbed a gun he had in the backseat of the car and started shooting. He first said that he did not mean to kill and then said he was trying to kill the man, but "didn't think he'd die from such a distance." He also admitted to being very mad. Defendant answered affirmatively when asked if he had left Chicago because he was scared of being arrested. He was asked several times if he wanted to say anything else—to tell his side of the story—but never mentioned that he was afraid of Melendez or the Latin Kings. He never said that Melendez had a gun in his hand when he was shot or that Melendez had threatened defendant. He further stated that he had never heard of the name "Robert Melen-

dez" and did not know the name of the man he had shot. Thus, it is apparent that there are several pertinent inconsistencies between this statement and defendant's trial testimony.

The case of *People v. Timmons* (1983), 114 Ill. App. 3d 861, 449 N.E.2d 1366, relied on by defendant, is inapposite to the situation in the present case. In *Timmons,* after being arrested, the defendant denied any involvement in the illegal activity charged and then later, at trial, produced an alibi for his whereabouts at the time of the illegal transaction. A person denying a crime and later explaining that he was not present during the crime is not inconsistent behavior. Both statements assert noninvolvement. That is not true in this case. The rationale involved in shooting a man because one is mad is inconsistent with a shooting motivated by fright. Being scared of Robert Melendez is not possible if one had never heard the name before. We therefore conclude that the prosecutor's cross-examination and comments had a valid basis for impeachment purposes and thus were not violative of defendant's due process rights.

■ We must also reject defendant's claim that the prosecutor's argument to the jury was so egregious as to deny him a fair trial. He argues that even though all but one of the various remarks were not objected to at trial, this court should consider the combined alleged improprieties as plain error. Generally, the failure to object to prosecutorial remarks at trial and to specifically elucidate them in a post-trial motion waives the issue for review. (*People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.) Furthermore, improper arguments do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Baptist* (1979), 76 Ill. 2d 19, 389 N.E.2d 1200.) The record in this case reveals absolutely no prejudice to defendant. In fact, the record indicates the contrary. The facts show that defendant could easily have been convicted of murder, but was found guilty only of manslaughter. There are no facts to indicate he could have been found not guilty as asserted by defendant. Accordingly, we find no reversible error.

However, this is not to say that this court sanctions the type of remarks made by the prosecutor in this case, especially the several references to the victim's family. More and more often, we are reviewing cases in which the prosecutor treads a dangerous path and crosses the line between proper argument and prosecutorial misconduct. Rather than helping a prosecutor's case, such remarks can jeopardize the State's position, which result may well be what occurred in the present case.

Defendant's final argument contends that he was improperly

sentenced. He bases this contention on several factors: the trial court relied on an improper factor, reference to the victim's family, in sentencing defendant to the penitentiary; the trial court made findings during sentencing inconsistent with the jury verdict; and it was an abuse of discretion to deny defendant probation when he had no prior record and had been completely rehabilitated subsequent to the killing.

■ We find no impropriety in the sentencing of defendant. The sentence was within the relevant statutory limits. (Ill. Rev. Stat. 1985, ch. 38, pars. 9—2(b), 1005—8—1(a)(4).) A reviewing court should afford great deference to a trial court's imposition of sentence. (*People v. La Pointe* (1981), 88 Ill. 2d 482, 431 N.E.2d 344.) Furthermore, a trial court's sentencing decision will not be disturbed absent an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

■ At defendant's sentencing hearing, the trial court properly set forth the aggravation and mitigation factors and noted that probation was inappropriate because of the seriousness of the offense. The record of the sentencing hearing, read in its entirety, reveals no improper reliance by the court on circumstances of the victim's family despite one isolated reference to the family. Similarly, the trial court's expression that it had reservations as to whether defendant had killed Melendez as a result of serious provocation is not inconsistent with the jury's finding of voluntary manslaughter since the verdict did not indicate whether this finding was based on provocation or unreasonable belief of self-defense. Therefore, we cannot find any abuse of discretion in defendant's sentence of five years, and accordingly, must affirm it.

Affirmed.

PINCHAM and COCCIA, JJ., concur.