THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LARRY ROBINSON, Defendant-Appellant.
First District (5th Division)   No. 1—87—1365

Opinion filed December 15, 1989.

Michael J. Pelletier and Martin Carlson, both of State Appellate Defender's Office, and Winston & Strawn, both of Chicago (William G. Miossi, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Renee G. Goldfarb, and Jerry D. Bischoff, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE MURRAY delivered the opinion of the court:

Defendant Larry Robinson appeals from his jury convictions of murder and robbery, for which he was sentenced to concurrently serve 60 years for murder and seven years for robbery. On appeal, defendant contends that the evidence was insufficient to meet the guilty beyond a reasonable doubt standard and, further, the trial court erred in failing to instruct the jury on voluntary manslaughter.

William Delemore was found dead with his body set afire at approximately 5:30 a.m. on April 29, 1986. He was lying in the building lobby at 511 East Browning Street (511 building) near a blood-spattered wall. No wallet or identification was found on the body. In response to a call, several hours later police officers were given articles belonging to Delemore, *e.g.*, credit cards, paycheck, by a resident living in apartment 502 in a building located at 514 East 36th Street (514 building); defendant lived almost directly above in apartment 601. The resident had found the items on the floor approximately one foot from the elevator which was near her apartment.

The record reveals the following facts. During the evening of April 28, 1986, there was a social gathering at which liquor was consumed in an apartment in a building located at 540 East 36th Street (540 building). (All three buildings being discussed are a part of the Chicago Housing Authority Ida B. Wells project.) Andre Daniel, a State witness, lived in this apartment with his fiancee. Sometime during the evening, defendant's girl friend, Mugette Jackson, called the party and asked defendant to come home; it is not known when defendant actually left the 540 building. Defendant lived with Jackson in the 514 building.

Daniel testified that around 4:30 a.m. on April 29, he was returning home from a store with a six-pack of beer when he met defendant, either outside or in the lobby of the 514 building. The two men had a short, general conversation during which Daniel noticed a man asleep on the lobby floor. According to Daniel, defendant grabbed the sleeping man (later identified as Delemore) by his collar, and with two hands, started banging Delemore's head against the wall. When defendant asked Delemore his name, there was no response. Daniel said that Delemore did not fight back. When Daniel grabbed defendant and told him to let the man alone because he was drunk, defendant said that he would do the same to him (Daniel). Daniel left the building while defendant was still banging the victim's head and ran into Lee Moore. The two men returned to the 514 building and pulled defendant off Delemore. Daniel noticed that the victim was bleeding

around his head. As the men held defendant, Daniel told Delemore to run. Delemore ran toward the 511 building with defendant running after him. Buildings 514 and 511 are across a playground from each other.

Daniel then went to his fiancee's apartment in the 540 building, told her what was happening, and then went back down to the 511 building 5 or 10 minutes later. As he walked into the building, he saw defendant beating Delemore and stomping on his face and chest for quite a while. Delemore did not speak or move and had blood all over his face. Defendant then went through Delemore's pockets, removed his wallet, and took money from it. Daniel returned to the 540 apartment, but went back to the 511 building no more than 10 minutes later. He saw that a man's outstretched legs were on fire and returned to his apartment and called the "We Tip" emergency service. This call was later verified. However, it is not clear whether Daniel made the call during his second return to his apartment or after seeing the fire.

Lee Moore also testified for the prosecution. He stated that during the early morning hours he descended the inside stairs to the lobby of the 514 building and saw defendant and Delemore fighting, with Daniel watching. Delemore was stumbling and weaving from side to side, and he and defendant were swinging at each other. Moore and Daniel broke up the fight but defendant broke loose and started hitting Delemore again. Moore and Daniel stopped the fight a second time, after which defendant picked Delemore up off the floor and threw him out of the building. Moore last saw the stumbling and tripping victim head towards the 511 building, followed by defendant. On cross-examination, Moore stated that both defendant and Delemore had blood on them and that they both had their fists raised (as though they were protecting their faces). Although both men were trying to kick each other, only defendant succeeded and, at some time, Delemore was knocked to the ground. Moore also said that he heard both men speak and that he saw defendant start the second fight.

Defendant testified that he had stayed at Daniel's home until 2 a.m., when he started home. When he got to the 514 building (where he lived), Delemore came up behind defendant and put a hand on his shoulder. Defendant objected, and Delemore said that he was putting his hand back on his shoulder, after which defendant slapped Delemore. Daniel then came into the building. Delemore put up his hands to fight, and defendant asked him if he wanted to fight. Delemore said yes, and the two men went to a clearing between the 511 and 514 buildings. Defendant hit Delemore exactly 14 times and only with

an open hand, periodically asking Delemore in between hits if he wanted to continue fighting. Defendant won the fight and said that he had left Delemore, bleeding but conscious, sitting against a door of the 511 building. Defendant then went home at approximately 2:30 a.m. He cleaned blood off his shoes with a wet rag and then went to sleep.

Testifying for the State, Mugette Jackson said that defendant did not come home from the party until 6 a.m. on April 29. When she came home from work later that day, Jackson saw the gym shoes that defendant had been wearing that morning soaking in a bucket of water. Later that evening, she gave the wet shoes, two pairs of defendant's jeans, and other clothing to the police when they came to the apartment. One leg of a pair of jeans was also wet.

Defendant's brother testified that in May 1986, he was present when Daniel told defense counsel that he (Daniel) did not see defendant take anything from the victim.

An assistant Cook County medical examiner testified that the victim suffered extensive head and face injuries with brain damage and also had injuries in the chest area. In her opinion, the medical examiner believed that Delemore died as a result of cranial cerebral injuries, which injuries were consistent with those incurred by having one's head banged on a wall or floor. She also reported that Delemore was dead before he was burned and that he had an ethanol intoxication level of 223 milligrams per deciliter. The doctor stated that this amount of alcohol would normally affect a person's coordination and make him drowsy and lethargic. There were no injuries on Delemore's hands indicating that he had been in a fight. There were, however, burn injuries.

After rejecting defendant's motion for a directed verdict, the court refused to tender a voluntary manslaughter instruction to the jury, concluding that the evidence presented did not warrant such an instruction. We agree and affirm the trial court for the following reasons.

■ Defendant's reasons for asserting that he was not proved guilty beyond a reasonable doubt are legally deficient. Although the "guilty beyond a reasonable doubt" standard has no explicit definition, it has been interpreted to mean that the burden has not been met where a reasonable juror could not return a guilty verdict (*People v. Collins* (1985), 106 Ill. 2d 237) or, a guilty verdict must be set aside where the evidence is so improbable, unsatisfactory, or inconclusive so as to be unworthy of belief (*People v. Ellis* (1978), 74 Ill. 2d 489). Defendant further argues that because his conviction rests solely upon

circumstantial evidence, his guilt must be thoroughly established to the exclusion of every other reasonable hypothesis of innocence. See *People v. Garrett* (1975), 62 Ill. 2d 151.

■ First, we are not so certain that, in a circumstantial evidence case, the "every other reasonable hypothesis of innocence" element should be elevated to a standard of proof. (*People v. Bryant* (1986), 113 Ill. 2d 497.) However, as a practical matter, in order to meet the "guilty beyond a reasonable doubt" standard, the prosecution would need to overcome any theories based on the facts that would reasonably indicate the possibility that a defendant could be innocent. The key word here is "reasonable." Defendant claims that reasonable doubt as to his guilt exists because of conflicts in the witnesses' testimony: Daniel's account of defendant's unprovoked assault on an unresponsive Delemore versus Moore's and defendant's mutual combat descriptions; discrepancies between Daniel's and Moore's statements regarding where they met up with each other (inside or outside the building); and Jackson's inconclusive testimony regarding the time defendant arrived home. Defendant further contends that the function of the jury to assess credibility of witnesses and weigh the evidence is not an issue here; the real issue is whether the evidence was insufficient for a jury to make a determination of guilt.

Contrary to defendant's assertions, this is not a case where a guilty finding was based solely on circumstantial evidence. There is both direct and circumstantial evidence here. Daniel's eyewitness testimony is direct evidence that defendant savagely and unprovokedly beat Delemore, who appeared to be intoxicated and uncoordinated. Moore's testimony is direct evidence that there was an unequal combat between defendant and an ineffectual Delemore that, after being stopped by the witnesses, was reinstigated by defendant. The medical examiner's determination that the injuries which caused Delemore's death were consistent with the type of beating described by Daniel is circumstantial evidence. Daniel's observation of defendant's robbery of Delemore is direct evidence; the finding of the victim's empty wallet and papers right below defendant's apartment is circumstantial. Thus, it is clear that the jury's assessment of the witnesses' testimony and the weight assigned thereto do play a role in the reasonable inferences it may draw. The jury apparently gave more weight to the testimony of Daniel, who was the only witness to see the beginning and the end of the "fight."

■ In any event, looking at Moore's testimony in its entirety, it is corroborative of Daniel's account regarding important facts. Both witnesses observed defendant's assault on, or fight with, a man who was

at an obvious disadvantage and, further, defendant became the aggressor after the fight was initially stopped. Both witnesses saw Delemore, shortly before his burning body was found, stumble towards the 511 building with defendant in pursuit. Without reiterating all the evidence presented to the jury, it is clear that there were sufficient facts to support the inference drawn by the jury that defendant killed Delemore. In fact, given the time frame, absent any evidence of the intervention of a third party or another possible cause of death, the only reasonable inference the jury could have drawn is that defendant severely beat an intoxicated man, which beating resulted in the victim's death. Thus, the evidence in this case does support the jury's determination that defendant was proved guilty beyond a reasonable doubt.

■■ ■ Defendant's argument that the court erred by not instructing the jury on voluntary manslaughter is also without merit. A court must give such an instruction in a murder trial if there is any evidence presented that, if believed by the jury, would reduce the crime to manslaughter. (*People v. Leonard* (1980), 83 Ill. 2d 411.) Defendant claims that the trial court should have given the instruction because he was acting under a sudden and intense passion resulting from serious provocation. (See Ill. Rev. Stat. 1985, ch. 38, par. 9–2(a).) However, before the instruction is given, the court must decide if enough evidence of serious provocation has been presented to put the issue to the jury.

In Illinois, mutual combat constitutes provocation sufficient to reduce murder to voluntary manslaughter. (*Leonard*, 83 Ill. 2d 411.) Mutual combat has been interpreted as "a fight or struggle which both parties enter willingly or in which two persons, upon a sudden quarrel, and in hot blood, mutually fight upon equal terms and death results from the combat." (*People v. Neal* (1983), 112 Ill. App. 3d 964, 967.) Although very slight evidence indicating voluntary manslaughter can justify the giving of the appropriate instruction, that evidence must demonstrate more than slight provocation; the provocation must be serious enough so as to excite a reasonable person to intense passion. *People v. Simpson* (1978), 74 Ill. 2d 497.

■ Even if we were to believe defendant's version of the facts, there is no evidence of provocation sufficient to require a manslaughter instruction. By his own account, defendant stated that Delemore put his hand on defendant's shoulder, and after defendant knocked it off, Delemore said he would do it again. After this, defendant slapped Delemore once and asked him if he wanted to fight. After going outdoors, defendant slapped Delemore once, causing him to fall, slapped him exactly 13 more times—stopping between each slap to ask Dele-

more if he wanted to continue the fight—until Delemore fell down a second time, thus ending the combat. Defendant testified that he had noticed that Delemore had been drinking and also stated that he had twice knocked down Delemore. Defendant said that he was hit four or five times but was never knocked down. Were it possible to consider the placing of a hand on one's shoulder to be adequate provocation (a consideration we emphatically reject), defendant's behavior, by his own testimony, was indicative of a calm and deliberate state of mind which belies the existence of any sudden and intense passion or, for that matter, mutual combat upon equal terms.

Accordingly, the evidence in this case is insufficient as a matter of law to mandate the giving of a voluntary manslaughter instruction to the jury.

Affirmed.

PINCHAM* and COCCIA, JJ., concur.

---

*Justice Pincham participated in the decision prior to his resignation.