THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ANGELA YOUNG, Defendant-Appellant.

First District (3rd Division)   No. 1—90—2357

Opinion filed June 30, 1993.—Rehearing denied September 7, 1993.

Rita A. Fry, Public Defender, of Chicago (Lisa S. Ottenfeld, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Andrew R. Dalkin, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Following a jury trial, defendant Angela Young was convicted of first degree murder for the stabbing death of Vanessa Odum and sentenced to 35 years' imprisonment.

On appeal, defendant asserts that the trial court erred by: (1) failing to quash defendant's arrest and suppress evidence when it refused to hear evidence regarding the reliability of the two occurrence witnesses who provided the police with information which led to the arrest of defendant; (2) prejudicing the jury against defendant by its alleged maltreatment of defense counsel in the presence of the jury; (3) limiting defense counsel's questioning of witnesses; (4) refusing to give jury instructions on second degree murder premised on serious provocation and on involuntary manslaughter; (5) allowing the prosecutor to make improper remarks during closing argument; (6) imposing an excessive 35-year sentence; and (7) not declaring the murder statute unconstitutional because it relieves the State from proving every element of murder.

For all the reasons which follow, we affirm defendant's conviction and sentence and also find that the murder statute is constitutional.

Vanessa Odum, the victim, died of stab wounds. There is no dispute that defendant and the victim had engaged in a fist fight on the night the victim died.

The State's position throughout the course of this case has been that defendant fatally stabbed the victim during the fist fight. On the other hand, defendant claims that someone else (specifically, Darryl Smith or D'Angelo Allen) stabbed the victim after defendant left the scene of the fight. During trial, defense counsel wanted to show that Smith and Allen were drug dealers but was precluded from doing so.

The following individuals were present at the fight: defendant, the victim, Mae (defendant's sister), Darryl Smith, D'Angelo Allen, and Leonard Davis.

In her confession, defendant, who was known by her middle name Tawanna, admitted that she had a fist fight with the victim and that she had a knife in her hand during the fight. Defendant's confession includes the following statement recorded by the police:

> "Tawanna raised her right hand and came down on the girl [the victim], but she was only trying to scare the girl and did not mean to stab her, and Tawanna did not know if she had stabbed the girl. *** The girl walked across the street *** and was screaming ***."

After driving around the block, Tawanna saw the victim still lying in the same place.

Prior to trial, defendant moved to quash her warrantless arrest and suppress her confession. At the hearing on this motion, the trial court heard the testimony of Detective Michael Rowan and the parties stipulated to the contents of the testimony of Detective Jones if he were called to testify.

Detective Rowan testified that he was assigned to investigate the stabbing death of Ms. Odum. In reviewing the original case report on the incident, Rowan discovered that there had been two eyewitnesses to the crime, i.e., Smith and Allen. Rowan brought Smith and Allen to the police station for questioning. Rowan and two other detectives (John Duffy and Jones) interviewed Smith, who indicated he had been a witness to the stabbing and had more information than he had given to the original beat officers. Smith identified the stabber, stated that she was known by the name of Tawanna, and gave the police a description of defendant and her family's residence but not the exact address. Smith said he saw defendant stab the victim while they were engaging in a fight. Allen recounted the same events in more detail, identifying defendant as the stabber but not aware of defendant's place of residence.

Smith then accompanied the police and directed them to the home of defendant. Smith remained in a police car with Detective Jones while Rowan spoke to defendant's grandmother outside the building. The grandmother said that defendant no longer lived with her. Rowan then saw Jones and Smith pointing at a second-floor window where defendant and another woman could be seen sticking their heads out the window. The grandmother ran into the building to the second-floor apartment and three police officers followed. Rowan found defendant hiding under a bed and arrested her.

During cross-examination, Rowan testified that the victim's mother, Betsy Odum, had told Rowan that she believed Smith and Allen were involved in the death of the victim. After Rowan transported Smith and Allen to the police station, he read them their *Miranda* warnings.

Also during cross-examination, defense counsel attempted to elicit testimony that two black males had gone to the victim's house during the day of the stabbing and told the victim's mother that the victim was going to be physically harmed. The State objected to such evidence as irrelevant and speculative since the two individuals who allegedly visited the victim's home earlier on the day of the stabbing were never identified. Defense counsel argued that the proffered information impacted on the credibility of Smith and Allen and the reliability of their statements. Defense counsel conceded that he could not show that Smith and Allen were the two men who had gone to the victim's house before the stabbing but nevertheless stated that Smith and Allen were drug dealers and the two unidentified men who had earlier issued threats to the victim were drug dealers.

The trial court sustained the State's objection and reasoned that reliability was an issue for trial but was irrelevant in the present hearing. The trial court, in denying defendant's motion, further explained that if Allen and Smith had been brought before a judge to secure a warrant and had attested that they witnessed the event, the judge would not have inquired into their reliability.

At trial, the testimony of three eyewitnesses (Smith, Allen and Davis) revealed essentially the same events leading to the victim's death. On the evening of May 11, 1989, Davis was driving defendant and her sister Mae to their mother's house when they saw Smith at a public telephone booth and Allen in the driver's seat of a parked car. Defendant asked Davis to stop his car so that she could talk to Smith. While Davis and Mae remained in the car, defendant walked over and talked to Smith and then proceeded to Allen's car to talk to Allen at the driver's side of his car.

Defendant began to argue with the victim, who was seated on the passenger side of Allen's car. As the argument continued, defendant walked around to the passenger side of the car.

When she reached the passenger side of the car, defendant began to swing her arms at the victim's face, struck the victim several times, opened the car door, grabbed the victim by her hair, and pulled the victim out of the car. A physical struggle ensued between defendant and the victim and attempts to separate the two women failed.

Eventually, Smith and Mae pulled defendant off of the victim and got her into Davis' car. Davis then left with defendant and Mae in his car.

Defendant did not testify at trial. In her confession, defendant stated that she was arguing with the victim, and when she got to the passenger side of Allen's car, the victim raised the car window on defendant's hands. After Allen told the victim to get out of the car, the victim opened the car door and defendant hit her. Defendant and the victim struggled inside the car for awhile and then the fight continued outside the car. While she had the knife open in her hand, defendant raised her hand "and came down on the" victim. Defendant did not know that she had stabbed the victim. After being pulled away by Smith, defendant got into Davis' car. Defendant heard the victim screaming and saw her walk across the street to a parking lot and fall. Davis then drove around the block and defendant saw the victim lying in the same place.

The jury convicted defendant of first degree murder, and the trial court sentenced her to 35 years in prison.

On appeal, defendant first asserts that in the pretrial hearing on her motion to quash arrest and suppress her confession, the trial court erred in limiting the evidence regarding the reliability of the two witnesses, Smith and Allen, because they had a motive to lie and were suspects in the killing. Absent additional evidence, defendant argues, there was no probable cause to arrest her and her confession should have been suppressed as the fruit of an illegal arrest.

The State contends that in light of the totality of the circumstances, the warrantless arrest of defendant was proper and the evidence tending to show the reliability of the witnesses' statements was irrelevant.

A reviewing court ordinarily will not disturb the decision of a trial court on a motion to quash and suppress unless its finding is determined to be clearly erroneous. *People v. Foskey* (1990), 136 Ill. 2d 66, 76, 554 N.E.2d 192.

We examine the totality of the circumstances in determining whether probable cause exists to support a warrantless arrest. *People v. Earnest* (1991), 224 Ill. App. 3d 90, 95, 586 N.E.2d 449, citing *Illinois v. Gates* (1983), 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317.

In *Gates*, the United States Supreme Court adopted the totality of circumstances approach and abandoned the two-prong test which required a strict analysis of (1) the basis of the informant's knowledge, and (2) his veracity or reliability. The *Gates* court held that "an informant's 'veracity,' 'reliability,' and 'basis of knowledge' are all highly relevant in determining the value of his report *** [but] they

should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause.' " *Gates*, 462 U.S. at 230, 76 L. Ed. 2d at 543, 103 S. Ct. at 2328.

In considering the validity of a warrantless arrest, the trial court must focus on the information available to the police preceding the arrest to make a probable cause determination. (*People v. Adams* (1989), 131 Ill. 2d 387, 398, 546 N.E.2d 561.) Although the information relied upon to establish probable cause to arrest must be supported by some indicia of reliability (*People v. Trice* (1991), 217 Ill. App. 3d 967, 975, 577 N.E.2d 1195), probable cause does not depend on any hard set of legal rules but rather depends on whether the police acted reasonably under the circumstances (*People v. Halmon* (1992), 225 Ill. App. 3d 259, 276, 587 N.E.2d 1182).

■ To the extent that it considered the informants' reliability to be irrelevant, the trial court erred because reliability is a factor to be considered under the totality of circumstances approach. However, the reliability factor alone is not dispositive in a probable cause determination.

The information obtained by Smith and Allen was sufficient to establish probable cause to arrest defendant. Both individuals were eyewitnesses to the crime and identified the killer as Tawanna. With the physical description of Tawanna and the location of her residence provided by Smith and Allen, the police acted reasonably under the circumstances.

In the pretrial hearing, the trial court heard testimony that the police considered Smith and Allen to have been involved in the crime before they picked them up for questioning. With these suspicions in mind, the police gave Smith and Allen their *Miranda* warnings before interviewing them. Accordingly, the trial court knew the status of Smith and Allen as suspects in making a probable cause determination. Moreover, defense counsel admitted that he could not establish that Smith and Allen were the two men who allegedly visited the victim's home to issue threats before the stabbing.

Accordingly, under the totality of the circumstances standard, we find that the denial of defendant's motion to quash arrest and suppress the confession was not clearly erroneous.

Second, defendant asserts that she was deprived of a fair trial due to the alleged maltreatment of defense counsel by the trial judge throughout the trial in front of the jury. Defendant argues that the jury may have surmised that defense counsel was incompetent or that the defense case was fundamentally flawed, or both.

The State advances three responses: (1) defendant has waived this issue by failing to object to any of the judge's comments at trial and by making only vague, general allegations of error in her post-trial motion; (2) the trial judge's remarks were not erroneous; and (3) even if the remarks are deemed to be error, the error is harmless because they did not prejudice or harm defendant.

Absent plain error, both a trial objection and a written post-trial motion raising the issue are required to preserve an alleged error for review. (*People v. Enoch* (1988), 122 Ill. 2d 176, 190, 522 N.E.2d 1124.) The waiver rule, however, is less rigidly applied where the basis for the objection is the conduct of the trial judge. *People v. Nevitt* (1990), 135 Ill. 2d 423, 455, 553 N.E.2d 368 (the supreme court considered defendant's issues concerning the conduct of the trial judge even though defendant had not raised any issues of judicial impropriety in his post-trial motion).

In the present case, defendant did not object at trial to the judicial remarks now challenged on appeal. In addition, defendant did not raise this issue in her post-trial motion. The closest allegation mentioned in defendant's post-trial motion states that "[t]he Court improperly injected itself into the case by making its own objections to defendant's questions."

Notwithstanding the procedural omissions by defendant, we find that the waiver rule is flexible enough on the authority of *Nevitt* for us to consider the alleged judicial impropriety in this case.

The first complained-of remark occurred during the cross-examination of Darryl Smith when the defense counsel attempted to ask Smith if the police told him that the police believed he was involved in the victim's death. Defense counsel posed two questions on this matter. The State objected and the trial judge sustained both objections. The following exchange then occurred:

"THE COURT: Objection sustained, unless you have some specific conversation that you are talking about.

DEFENSE COUNSEL: Specific conversation?

THE COURT: Yes. And not some summarization or—

DEFENSE COUNSEL: It is not a summarization.

THE COURT: —or speculation."

Thereafter the trial judge granted defense counsel's request for a sidebar. At the sidebar, defense counsel stated his offer of proof and the court ruled that a statement by the police officer to the witness constitutes hearsay.

The cross-examination of Smith continued and Smith testified that at the police station he was in an interview room with one police offi-

cer and that Allen was not present in the room. The second colloquy challenged by defendant then occurred:

"DEFENSE COUNSEL: Were you [Smith] or D'Angelo Allen dealing drugs at the time of this particular incident?

SMITH: No, I do not deal drugs.

DEFENSE COUNSEL: At the time on May 11th, 1989—

ASSISTANT STATE'S ATTORNEY: Objection, asked and answered.

THE COURT: I will allow it. This question, I take it, is another speculation.

DEFENSE COUNSEL: I don't think it is a speculation, no. I believe—

THE COURT: Wait. Are you going to offer proof on that point?

DEFENSE COUNSEL: I can do that again, sir, yes.

ASSISTANT STATE'S ATTORNEY: Objection.

DEFENSE COUNSEL: I can do that at a sidebar, yes.

THE COURT: No, I want to know.

ASSISTANT STATE'S ATTORNEY: Objection.

THE COURT: In the course of this trial, are you going to offer proof on the point of which you have—

DEFENSE COUNSEL: I expect to.

THE COURT: —you have just—I don't mean by some hearsay means. I mean evidence.

DEFENSE COUNSEL: I expect that some individuals will say so, yes, will say that.

ASSISTANT STATE'S ATTORNEY: Objection.

THE COURT: Not what you expect. Are you going to offer the proof?

DEFENSE COUNSEL: Can we do this outside the presence of jury? I will explain my position.

THE COURT: I just want to know.

DEFENSE COUNSEL: What I believe is proof. I believe that, yes. I will offer proof that—

ASSISTANT STATE'S ATTORNEY: Objection.

THE COURT: You are going to have someone testify?

DEFENSE COUNSEL: I believe that someone will testify to that fact that someone will—

THE COURT: You don't sound very sure, but we will let it stand as it is now without striking anything. Defendant's answer may stand. You may go on."

On cross-examination of Leonard Davis, the third contested exchange occurred when defense counsel was referring to the time when defendant walked over to Allen's car on the night of the stabbing:

"DEFENSE COUNSEL: Did you [Davis] know Big D [Allen] at the time?

DAVIS: No. I just knew him, hearing his name on the streets.

DEFENSE COUNSEL: Did you know his reputation?

DAVIS: About on the street.

DEFENSE COUNSEL: Pardon me?

DAVIS: Hearing it on the street.

DEFENSE COUNSEL: Can I have a sidebar for a moment.

(Following proceedings had during sidebar.)

DEFENSE COUNSEL: I asked for sidebar because I was going to ask this young man if his representation, Big D's [Allen] reputation was that of a drug dealer.

ASSISTANT STATE'S ATTORNEY: I am going to object.

DEFENSE COUNSEL: That is why I asked for a sidebar. When the Court asked me at one point in time whether or not I would be able to produce evidence, it is this young man who told me that Big D [Allen] was, in fact, a drug dealer and that Twin [Smith] worked for him. He would be the evidence I told you I would produce. And that—

THE COURT: All specious, specious hearsay.

DEFENSE COUNSEL: Well, that is why I came over here as a sidebar.

THE COURT: Yes, objection sustained.

DEFENSE COUNSEL: Thank you."

The cross-examination of Davis then continued.

The fourth and final colloquy challenged by defendant occurred during cross-examination of Detective Michael Rowan. Rowan testified that when he arrested defendant at her home, he did not recover any bloody clothing or a knife. The following exchange then occurred:

"DEFENSE COUNSEL: Did you [Detective Rowan] ever go back to that home to search for a white jogging suit or any clothing with blood or a knife?

ASSISTANT STATE'S ATTORNEY: Objection.

THE COURT: Objection sustained, unless you are going to offer some evidence on all of these point[s].

DEFENSE COUNSEL: I can't ask what he did next, if he went back.

THE COURT: You may not ask speculative questions or you will be here for a month??

DEFENSE COUNSEL: I am not asking for speculative, no.

THE COURT: No speculation. If you are going to offer evidence on these points, then you may go into it. If you are not, then they are speculations.

DEFENSE COUNSEL: I believe the evidence will be that he did not go back and I believe it is relevant.

THE COURT: Just a minute. Did you understand my ruling?

DEFENSE COUNSEL: Yes, sir.

THE COURT: Okay. Objection sustained.

DEFENSE COUNSEL: Did you ever go back to the house at 12017 South Lowe when Angela was arrested?

THE COURT: Just a minute. Are you going to offer evidence that he did?

DEFENSE COUNSEL: No, sir.

THE COURT: Then objection—.

DEFENSE COUNSEL: I don't believe he did. I believe the jury is entitled to know that.

THE COURT: Don't talk when I an talking to you, sir. Then objection is sustained."

Based on the above-cited colloquies, defendant argues that the trial court abrogated its duty as impartial referee, became an advocate for the State, made erroneous rulings, communicated to the jury its impatience with defense counsel and belittled defense counsel. This judicial conduct, according to defendant, deprived her of a fair trial and thus constitutes reversible error.

To insure that an accused receives a fair and impartial trial by a jury, a trial judge must not interject opinions, comments, or insinuations reflecting prejudice against or favor toward any party. (*People v. Williams* (1991), 209 Ill. App. 3d 709, 718, 568 N.E.2d 388.) A trial judge may convey improper or prejudicial impressions to the jury by displaying a hostile attitude toward defense counsel, by inferring that defense counsel's presentation is unimportant, or by suggesting that defense counsel is attempting to present a case in an improper manner. *People v. Harris* (1988), 123 Ill. 2d 113, 137, 526 N.E.2d 335.

To constitute reversible error, however, the defendant bears the burden of demonstrating that the trial judge's comments were a material factor in the conviction or were such that an effect on the jury's verdict was the probable result. *Harris*, 123 Ill. 2d at 137; *People v. Batchelor* (1990), 202 Ill. App. 3d 316, 328, 559 N.E.2d 948.

Defendant directs our attention to *People v. Mitchell* (1992), 228 Ill. App. 3d 167, 592 N.E.2d 175, which held that the defendant was entitled to a new trial due to the prejudicial effects of judicial bias. In *Mitchell*, the trial judge flagrantly displayed bias against the defendant throughout the trial by making disparaging remarks regarding defense evidence and theories, interrupting *sua sponte* and thus undermining defense counsel's opening statement and examination of witnesses, representing testimony for the State, manifesting a hostile attitude toward defense counsel, and making inconsistent rulings of law in favor of the State.

We find *Mitchell* distinguishable from the present case. From our review of the entire record and the particular remarks cited by defendant, the impropriety, egregiousness and pervasiveness of the judge's comments and attitude toward the defense in *Mitchell* are simply not present in the case at bar.

■ We find nothing improper about the third contested exchange between defense counsel and the trial judge because it occurred during a sidebar. It is axiomatic that any comments made outside the presence or hearing of the jury cannot affect the jurors. See *People v. Amos* (1990), 204 Ill. App. 3d 75, 86, 561 N.E.2d 1107.

We find that the remaining challenged remarks by the trial judge were inappropriate and should not have been made because they indicated that defense counsel was failing to offer proper proof and evidence. The judge's comments in the presence of the jury were particularly unnecessary since defense counsel requested a sidebar to explain his position but was ignored by the trial judge in this request. A trial judge must exercise a high degree of care to avoid influencing the jury, because jurors are " 'ever watchful of the attitude of the trial judge and his influence upon them is necessarily and properly of great weight.' " *People v. Sprinkle* (1963), 27 Ill. 2d 398, 403, 189 N.E.2d 295, quoting *People v. Marino* (1953), 414 Ill. 445, 450, 111 N.E.2d 534.

However, the remarks were made while ruling on objections made by the State during defense counsel's cross-examination of witnesses. A court's method of ruling upon an objection may indicate an opinion as to the validity of a party's position; however, the context of the judge's remark must be considered in determining whether any prejudice resulted. (*People v. Velasco* (1989), 184 Ill. App. 3d 618, 640, 540 N.E.2d 521; *People v. Merz* (1984), 122 Ill. App. 3d 972, 980, 461 N.E.2d 1380.) Moreover, a trial judge may act to clarify and expedite the examination of a witness without prejudicing the defendant. *People v. Nelson* (1991), 206 Ill. App. 3d 956, 967b, 571 N.E.2d 879.

Although it would have been better if some of the comments had not been made, from our review of the record, we find that these comments were not a material factor in defendant's conviction or so prejudicial as to constitute reversible error.

Defendant next asserts that the trial court violated her right to present a defense when it limited defense counsel's questioning on seven particular occasions involving six different witnesses, *i.e.*, Detective Rowan, Darryl Smith, Dr. Nancy Jones (the medical examiner), D'Angelo Allen, Leonard Davis, and Officer Steven Shoup. Defendant also submits that the trial court failed to allow impeachment of Betsy Odum.

The State contends that defendant waived these arguments because she did not raise these issues with adequate specificity in her motion for a new trial. We agree.

In her post-trial motion for a new trial, defendant made the following pertinent allegations in paragraphs five and seven:

> "5. The Court erred in improperly limiting defense cross examinations of the State witness.
>
> \*\*\*
>
> 7. The Court erred by not allowing defense counsel to perfect impeachment."

A written post-trial motion must set forth with sufficient specificity the errors relied upon for reversal or else such alleged errors are waived on review. *People v. Ford* (1987), 163 Ill. App. 3d 497, 502, 516 N.E.2d 766; *People v. Thomas* (1984), 121 Ill. App. 3d 883, 891, 460 N.E.2d 402; Ill. Rev. Stat. 1989, ch. 38, par. 116—1(c) (a motion for a new trial "shall specify the grounds therefor").

The Illinois Supreme Court explained the purpose of the post-trial specificity rule as threefold:

> "First, it allows the decision maker who is most familiar with the events of the trial, the trial judge, to review his decisions without the pressure of an ongoing trial and to grant a new trial if, on reconsideration, he concludes that his earlier decision was incorrect. [Citations.] Second, by requiring the statement of the specific grounds urged as support for the claim of error, the rule allows a reviewing court to ascertain from the record whether the trial court has been afforded an adequate opportunity to reassess the allegedly erroneous rulings. Third, by requiring the litigants to state the specific grounds in support of their contentions, it prevents them from stating mere general objections and subsequently raising on appeal arguments which the trial judge was never given an opportunity to

consider. [Citations.]" *Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50, 415 N.E.2d 337.

This court has applied the *Brown* criteria and determined that a defendant's motion for a new trial is inadequate where the specific alleged untoward and improper remarks made by the prosecutor in closing arguments are not designated in the motion. (*People v. Turk* (1981), 101 Ill. App. 3d 522, 532-33, 428 N.E.2d 510.) In *Turk*, the post-trial motion merely claimed that the prosecutor's arguments were "inflammatory, prejudicial and invaded the defendant's Sixth Amendment right to counsel and exhorted the jury to convict the defendant based on matters which [are] dehor [*sic*] the record in violation of defendant's rights under the Sixth and Fourteenth Amendments of the United States Constitution." *Turk*, 101 Ill. App. 3d at 533.

Similarly, the supreme court concluded that the defendant waived any claims regarding the improprieties before and after issuance of a search warrant where the defendant merely claimed in his post-trial motion for a new trial that the trial court "erred in denying defendant's Motion to Quash the Search Warrant and to Suppress Evidence Illegally seized." (*People v. Edwards* (1991), 144 Ill. 2d 108, 133, 579 N.E.2d 336.) The supreme court found that these claims were waived because "[d]efendant does not indicate how the trial court 'erred' or otherwise provide a legal basis for his argument" in his post-trial motion. *Edwards*, 144 Ill. 2d at 133.

A post-trial motion which stated in relevant part that the "court erred in admitting improper evidence and erred in overruling the objections of the defendant" was found to be "so general as to defeat the purposes envisioned by section 116—1." *People v. Bailey* (1979), 77 Ill. App. 3d 953, 955-56, 404 N.E.2d 258.

■ In the present case, we find that the bare statements made in defendant's post-trial motion fail to state with sufficient specificity the arguments now advanced as error. The meager allegations that the trial court erred "in improperly limiting defense cross examination of the State witness" and "by not allowing defense counsel to perfect impeachment" are no more meaningful than the general allegations which were rejected in *Brown, Turk, Edwards*, and *Bailey*. Regarding the first allegation, defendant would have us accept the bare contention as adequate to review seven different occurrences involving six different witnesses even though no names are indicated and no subject matter is presented. Regarding the second allegation, no specifics are advanced to determine which witness and what type of impeachment to which defendant was attributing error. The obvi-

ous omissions of the name of a witness and the subject matter of the alleged errors are fatal for the purposes of the rule mandating specificity.

Moreover, defendant failed to advance any arguments regarding his post-trial motion during the hearing held on his sentencing and his motion for a new trial. Instead, defendant specifically waived argument on his post-trial motion and thus did not afford the trial court any opportunity to reexamine its earlier rulings which is the basic purpose of a post-trial motion. See *Brown*, 83 Ill. 2d at 351; *Turk*, 101 Ill. App. 3d at 533.

Lax post-trial practice evidenced by post-trial motions which are insufficiently specific has been condemned because it effectively defeats the underlying purpose of the post-trial motion, *i.e.*, to permit the trial court to review and correct alleged errors that occurred during trial. *People v. Camp* (1984), 128 Ill. App. 3d 223, 232, 470 N.E.2d 540.

Contentions made in a post-trial motion which fails to state with specificity the reasons urged on appeal as reversible error are waived absent application of the limited plain error exception. (*People v. Jointer* (1989), 180 Ill. App. 3d 364, 371, 535 N.E.2d 1039.) From our review of the record, we find no justification to invoke the plain error exception. *Edwards*, 144 Ill. 2d at 133; *Jointer*, 180 Ill. App. 3d at 371.

Defendant next asserts that the trial court erred by refusing her tendered jury instructions on second degree murder premised on serious provocation and involuntary manslaughter.

The State contends that these two jury instructions were properly denied because the evidence failed to establish either "serious provocation" by the victim to warrant a second degree murder instruction or "reckless" conduct by defendant to warrant an involuntary manslaughter instruction.

The second degree murder statute provides, in relevant part:

"(a) A person commits the offense of second degree murder when he commits the offense of first degree murder *** and either of the following mitigating factors are present:

(1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed ***; or

(2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles [of self-defense], but his belief is unreasonable.

(b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person." Ill. Rev. Stat. 1989, ch. 38, par. 9—2.

In the present case, the instruction for the offense of second degree murder based on an unreasonable belief in self-defense was given to the jury. Instructions on both forms of second degree murder, *i.e.*, unreasonable belief in self-defense and serious provocation, are appropriate where warranted by the evidence. *People v. Lewis* (1992), 229 Ill. App. 3d 874, 880, 594 N.E.2d 414; *Ford,* 163 Ill. App. 3d at 503.

A defendant is generally entitled to an instruction on any recognized defense where sufficient evidence exists for a reasonable jury to find in his favor. *People v. Everette* (1990), 141 Ill. 2d 147, 156, 565 N.E.2d 1295.

The statute clearly establishes that to support a finding of second degree murder based on serious provocation, the defendant must have been "acting under a sudden and intense passion resulting from serious provocation by the individual killed." Ill. Rev. Stat. 1989, ch. 38, par. 9—2(a)(1).

A jury instruction on second degree murder due to serious provocation is required where there is evidence of mutual combat. (*People v. Austin* (1989), 133 Ill. 2d 118, 125, 549 N.E.2d 331 (the offense of voluntary manslaughter was replaced with the offense of second degree murder effective July 1, 1987); *Lewis,* 229 Ill. App. 3d at 879-80 (case law pertaining to voluntary manslaughter and murder under the prior murder statute are applicable to first degree murder and second degree murder under the new law).) Mutual combat is defined as "a fight or struggle which both parties enter willingly or where two persons, upon a sudden quarrel and in hot blood, mutually fight upon equal terms and where death results from the combat." *Austin,* 133 Ill. 2d at 125.

In *Austin,* the Illinois Supreme Court held that the defendant was not entitled to a serious provocation instruction because the victim did not enter the struggle willingly and the fight was not on equal terms. (*Austin,* 133 Ill. 2d at 125.) In *Austin,* a bus passenger (the defendant) and a bus driver (the deceased victim) fought after the defendant refused to pay the full fare. The altercation continued between the defendant and the driver until the defendant pulled a gun from her waistband and fired a shot into the floor of the bus. The parties then continued their struggle outside the bus until the defendant shot and killed the driver.

In rejecting the defendant's argument that a serious provocation instruction was required based on mutual combat, the supreme court

found that "[o]ne who instigates combat cannot rely on the victim's response as evidence of mutual combat sufficient to mitigate the killing of that victim from murder to manslaughter." (*Austin*, 133 Ill. 2d at 126.) In addition the court found that "the provocation must be proportionate to the manner in which the accused retaliated" and shooting the bus driver "was an act completely out of proportion to the provocation." (*Austin*, 133 Ill. 2d at 127.) "The crime is murder when a defendant attacks a victim with violence out of all proportion to the provocation" especially where the murder is committed with a deadly weapon. *Austin*, 133 Ill. 2d at 127.

Mere words generally are not sufficient to show provocation. (*People v. Brown* (1991), 222 Ill. App. 3d 703, 720, 584 N.E.2d 355.) The evidence upon which defendant relies to support a serious provocation instruction must rise above the level of a mere factual reference or witness' comment. *Austin*, 133 Ill. 2d at 125.

■ In the present case defendant argues that her statement alone provided sufficient evidence to warrant the serious provocation instruction because she said that the first physical encounter between she and the victim occurred when the victim closed the car window on her hand, that the victim was trying to pull her into the car, that the victim opened the car door to get out, and that the victim was winning the fight.

However, defendant's statement also reveals that defendant walked up to the driver's side of the car to talk to Allen and then she and the victim began a verbal argument. When defendant said she was going to get into the car, she walked to the passenger side of the car while still arguing with the victim and the victim then raised the car window which caught defendant's hands. According to defendant's statement, Allen told the victim to get out of the car and when she opened the car door to comply, defendant hit her.

Defendant also relies on the testimony of Allen and Davis to show that the victim exited the car. Although defendant apparently believes that this fact is indicia of the victim's consent to do battle with defendant, defendant ignores the testimony which established that defendant opened the passenger door, was hitting the victim and pulling her out of the car by her hair.

The testimony of all three occurrence witnesses (Allen, Smith and Davis) paints a picture of defendant as the armed instigator of the physical fight and the victim as an unarmed and unwilling participant.

At trial Allen testified that when defendant reached the passenger side of the car, she started swinging her arms at the victim and

was trying to pull her out of the car by grabbing the victim by her hair. The victim, according to Allen, "was trying to protect herself."

Smith testified to the same events, *i.e.*, that defendant went to the passenger door, opened the car door, grabbed the victim by her hair, started swinging at the victim's face, struck the victim about four times, and pulled the victim out of the car. Smith further testified that as the fight continued, defendant picked the victim up and threw her on the top of the hood of the car. At that time, Smith saw a knife in defendant's hand and heard the victim "hollering about she's stabbing me." Smith and Allen attempted to break up the fight but were unsuccessful. Defendant then sat on top of the victim while she was on the ground, repeatedly struck her, and stabbed the victim. Smith testified that the victim "tried to get up to go home because she was trying to run."

Davis testified that when defendant approached the passenger side of the car, she began to swing both of her arms at the victim inside the car and that defendant, not the victim, opened the car door.

Defendant also observes that the toxicology report on the victim showed that the victim had one of the largest quantities of cocaine ever seen by the medical examiner. Defendant argues that such a high level of cocaine could have caused the victim to be very aggressive.

The record, however, does not reveal any evidence to show that the victim was aggressive other than the verbal assaults leveled against defendant and the blows struck during the fist fight.

Moreover, as the armed bus passenger in *Austin* was not entitled to a provocation instruction since she had instigated the fight and acted out of all proportion to the provocation by the unarmed bus driver, defendant in the present case is not entitled to such an instruction even though the unarmed victim engaged in a fist fight with defendant as had the unarmed bus driver in *Austin*. "Struggling with an attacker in an effort to ward off or defend one's self against an assault is not sufficient to warrant a provocation instruction." *Lewis*, 229 Ill. App. 3d at 881.

Defendant argues that *People v. Leonard* (1980), 83 Ill. 2d 411, 415 N.E.2d 358, supports her contention that a second degree murder instruction was warranted in the present case. We disagree.

In *Leonard*, an armed security guard was fatally shot while he struggled with the defendant over the defendant's handgun. The undisputed testimony of three eyewitnesses revealed that each combatant was holding a part of the handgun while they struggled. Although none of the eyewitnesses saw an exchange of blows between the two men, there was evidence that the defendant suffered a laceration of

the lower lip which required sutures. After the security guard was shot, the defendant pushed him over a banister, yelled "Die mother f-----, die," and did not attempt to flee. The supreme court found that a voluntary manslaughter instruction should have been given because the evidence showed that the defendant had demanded entry into the premises in a threatening manner, suffered physical injuries, was operating under an intense passion given his statements after the shooting, and was engaged in a struggle over a weapon.

Unlike the victim in *Leonard,* the victim in the case at bar was unarmed. Unlike the defendant in *Leonard,* defendant in the instant case fled the scene of the fight and offered no evidence to indicate that she had suffered any physical injury. Unlike the scenario in *Leonard,* there is no evidence in the present case to suggest that defendant and the victim were struggling for possession of the weapon.

Before a second degree murder instruction can be given, the trial court must decide if enough evidence of serious provocation has been presented to put the issue to the jury. (*People v. Robinson* (1989), 192 Ill. App. 3d 225, 231, 548 N.E.2d 674.) Evidence of slight provocation is not sufficient, but rather the provocation must be serious enough to excite a reasonable person to intense passion. (*Robinson,* 192 Ill. App. 3d at 231.) The mutual combat aspect of provocation does not apply as a matter of law where a defendant on slight provocation attacks a victim with violence that is out of proportion to the provocation. *Austin,* 133 Ill. 2d at 126-27; *People v. Pierce* (1991), 223 Ill. App. 3d 423, 436-37, 585 N.E.2d 255; *People v. Lockhart* (1990), 201 Ill. App. 3d 700, 714, 558 N.E.2d 1345; *People v. Dower* (1991), 218 Ill. App. 3d 844, 853, 578 N.E.2d 1153; *Ford,* 163 Ill. App. 3d at 503.

From our thorough examination of the record, we find that the trial court properly rejected a jury instruction on second degree murder based on serious provocation because the evidence did not support such an instruction.

Defendant next asserts that instructions on involuntary manslaughter should have been given based solely on her statement that she forgot the knife was in her hand and did not mean to stab the victim. We disagree.

To justify an instruction on involuntary manslaughter, there must be some credible evidence in the record to show that the defendant "recklessly" performed the actions which caused the death of the victim. (Ill. Rev. Stat. 1989, ch. 38, par. 9—3(a); *People v. Foster* (1987), 119 Ill. 2d 69, 87-88, 518 N.E.2d 82; *People v. Riddle* (1988), 175 Ill. App. 3d 85, 89, 529 N.E.2d 713.) Recklessness is statutorily defined

as a conscious disregard of a substantial and unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation. Ill. Rev. Stat. 1989, ch. 38, par. 4—6.

■ An involuntary manslaughter instruction is not warranted where the evidence reveals that the defendant voluntarily and wilfully commits an act which has the natural tendency to cause death or great bodily harm as such acts demonstrate an intent to kill or injure the victim. *Foster*, 119 Ill. 2d at 87-88; *People v. Mocaby* (1990), 194 Ill. App. 3d 441, 449-50, 551 N.E.2d 673.

Any assertion of reckless or inadvertent conduct would be defeated by the nature of the alleged criminal conduct. (*People v. Jones* (1987), 157 Ill. App. 3d 106, 112-13, 510 N.E.2d 116.) In *Jones* this court held that an involuntary manslaughter instruction was not warranted where the victim died from stab wounds incurred during a fight with the defendant and found that such situation "was not an instance of death brought on by defendant's reckless conduct; it was a death caused by a fight." *Jones*, 157 Ill. App. 3d at 113.

We recognize that on remand from the supreme court, this court reconsidered the *Austin* case in *People v. Austin* (1990), 207 Ill. App. 3d 896, 566 N.E.2d 492, and held that the defendant was entitled to an instruction on involuntary manslaughter. The evidence which led to this result in *Austin*, however, is distinguishable from the record we now encounter in the present case.

In *Austin*, the defendant testified that the victim tried to grab the gun while they were fighting and the defendant jerked the gun away, apparently causing the gun to discharge. The *Austin* defendant did not remember either pulling back the hammer or pulling the trigger of the gun. *Austin*, 207 Ill. App. 3d at 899.

In the case at bar, no evidence was presented to suggest that defendant and the victim struggled for possession of the knife. Instead the evidence demonstrates that defendant never shared or released possession of the knife but rather she purposefully removed the knife from her jacket, intentionally caused the blade to open by hitting the knife against her leg, and continued to swing and hit the victim. To support her assertion that an involuntary manslaughter instruction was warranted, defendant relies solely on her statement that she forgot the knife was in her hand and, therefore, could not mean to stab the victim. With the exception of only this brief lapse in recalling her stabbing the victim, defendant's recollection of all other events before, during, and after the fight remained remarkably clear.

The record belies any argument that defendant's state of mind was reduced to that of recklessness. See *Riddle*, 175 Ill. App. 3d at 90 (no involuntary manslaughter instruction was warranted where the record did not evince that the defendant's power of reasoning had been suspended or reduced to the state of recklessness by intoxication).

We find defendant's reliance on *People v. Santiago* (1982), 108 Ill. App. 3d 787, 439 N.E.2d 984, is misplaced. In *Santiago*, the defendant fired a gun at an unoccupied, parked car with the intent of igniting its gas tank to create a diversion to break up a fight involving several persons who were swinging bats and sticks at the defendant's friends who were unarmed. The court concluded that an involuntary manslaughter instruction was warranted because the likelihood of injury or death was remote since the car was empty and there was no evidence that the unintended victim was standing near the empty car. *Santiago*, 108 Ill. App. 3d at 801-03.

In the case at bar, the likelihood of injury or death was not remote since defendant's actions clearly indicated that the victim was the intended subject of her knife. The record reveals that defendant had to reach into her coat pocket to pull out the knife and had to slap the knife against her leg to cause the blade to open due to the difficulty she had in opening the knife. Under the circumstance of this case, we find that the trial court did not err in refusing to instruct the jury on involuntary manslaughter.

Defendant next asserts that the State made two improper arguments during rebuttal argument: (1) that defense counsel failed to present evidence that Smith and Allen were drug dealers and (2) that the State misrepresented the law.

The State contends that (1) defendant has waived this issue for lack of specificity in her motion for a new trial; and (2) these two comments were proper and were based on the comments of defense counsel and the evidence presented at trial.

Paragraph 16 of defendant's motion for a new trial states:

> "16. The Assistant State's Attorneys made prejudicial inflammatory and erroneous statements in closing argument designed to arouse the prejudices and passions of the jury prejudicing the defendant's right to a fair trial."

Failure to designate the specific prosecutorial remarks which are challenged as error in a post-trial motion generally waives the issue for review. (*People v. Lopez* (1989), 181 Ill. App. 3d 216, 220, 536 N.E.2d 922.) The following general statements included in post-trial motions have been found insufficient to preserve the issue for appeal: the prosecutor "made prejudicial inflammatory and erroneou[s] state-

ments in closing argument designed to arouse the prejudice and passions of the jury" (*People v. Pendelton* (1989), 185 Ill. App. 3d 768, 777, 542 N.E.2d 386); the "prosecutor made prejudicial, inflammatory and erroneous statements in closing arguments" (*People v. David* (1986), 141 Ill. App. 3d 243, 261, 489 N.E.2d 1124); the trial court "erred in allowing the State to make a prejudicial and improper closing argument" (*Camp*, 128 Ill. App. 3d at 223); the prosecution's closing argument contained "prejudicial, inflammatory, and erroneous statements designed to arouse the passions and prejudices of the jury" (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77); and portions of the prosecution's closing argument were complained of as "prejudicial, inflammatory, and erroneous" and "designed to arouse the prejudices and passions of the jury" (*People v. Buford* (1982), 110 Ill. App. 3d 46, 55, 441 N.E.2d 1235).

■ The contention in the post-trial motion in the case at bar is indistinguishable from those assertions made and rejected as too general in the cases cited above. Accordingly, we find that defendant has waived the issue of the prosecutor's closing argument for failure to set forth the specific remarks asserted to be prejudicial. Furthermore, we find that the plain error doctrine need not be invoked because the evidence was not closely balanced so that the alleged error could have deprived defendant of a fair trial.

In the sixth issue raised on appeal, defendant asserts that the trial court abused its discretion in sentencing her to 35 years in prison.

■ The record reveals that defendant failed to object to her sentence at the sentencing hearing and she did not contest her sentence in any subsequent motion. Accordingly, defendant has waived this issue on review. (*People v. Hartzol* (1991), 222 Ill. App. 3d 631, 646, 584 N.E.2d 291; *People v. Williams* (1989), 180 Ill. App. 3d 294, 305, 535 N.E.2d 993.) Even assuming there was no waiver, as in *Hartzol* and *Williams*, we would not find that the trial court abused its discretion in imposing a 35-year sentence because this sentence falls within the statutory guidelines and the record shows that the trial court considered all pertinent information and the factors in aggravation and mitigation.

Lastly, defendant asserts that the scheme of the Illinois murder statute (Ill. Rev. Stat. 1989, ch. 38, pars. 9—1, 9—2) is unconstitutional because it violates due process by relieving the prosecution of its burden to prove beyond a reasonable doubt every element of murder.

■ This argument has been considered and rejected in numerous appellate decisions. (*E.g., People v. Mitchell* (1991), 221 Ill. App. 3d 926, 583 N.E.2d 78; *People v. Brown* (1991), 218 Ill. App. 3d 890, 578 N.E.2d 1168; *People v. Wright* (1991), 218 Ill. App. 3d 764, 578 N.E.2d 1090; *People v. Willis* (1991), 217 Ill. App. 3d 909, 577 N.E.2d 1215.) Defendant does not advance any grounds to necessitate reconsideration of this issue.

Affirmed.

TULLY, P.J., and CERDA, J., concur.